1    Brian Hennessy (SBN 226721)
     E-mail: BHennessy@perkinscoie.com
2    **Perkins Coie LLP**
     3150 Porter Drive
3    Palo Alto, CA 94304-1212
     Telephone: (650) 838-4300
4    Facsimile: (650) 838-4350

5    Elizabeth L. McDougall, WA Bar No. 27026 (*pro hac vice*)
     E-mail: EMcDougall@perkinscoie.com
6    James R. McCullagh, WA Bar No. 27744 (*pro hac vice*)
     E-mail : JMcCullagh@perkinscoie.com
7    **Perkins Coie LLP**
     1201 Third Avenue, Suite 4800
8    Seattle, Washington 98101-3099
     Telephone: (206) 359-8000
9    Facsimile: (206) 359-9000

10   Attorneys for Plaintiff
     craigslist, Inc.

11

## UNITED STATES DISTRICT COURT

12

## NORTHERN DISTRICT OF CALIFORNIA

13

## SAN JOSE DIVISION

14

15

16   craigslist, Inc., a Delaware corporation,

               Plaintiff,

17

       v.

18

19   Shui Yung Richard Tse, aka Eddie Temple,
     d/b/a Craigspimp.com and
     Shadydollars.com, Eddie Temple
20   Promotions LTD and Does 3 through 25,
     inclusive,

21

22            Defendants.

Case No.   CV 09 4738 JW

**PLAINTIFF CRAIGSLIST, INC.'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFAULT JUDGMENT AGAINST DEFENDANTS SHUI YUNG RICHARD TSE, AKA EDDIE TEMPLE AND EDDIE TEMPLE PROMOTIONS LTD**

23

| | |
|---|---|
| Date: | March 7, 2011 |
| Time: | 9:00 am |
| Dept.: | Courtroom 8, 4th Floor |
| Before: | Honorable James Ware |

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND PROCEDURAL HISTORY ...................................................... 2

II.   FACTUAL BACKGROUND ....................................................................................... 5

    A.    Craigslist's Copyright Protected Website and TOU ............................................. 5

    B.    Craigslist Security Measures ................................................................................ 5

    C.    Defendants' Abuse, Infringement, and Violation of Craigslist's Website,
        Services and Rights ............................................................................................. 6

        1.    Defendants' Services That Violate craigslist's Website, Services
            and Rights ................................................................................................ 6

        2.    Defendants Knowingly and Willfully Violated craigslist's Rights............ 7

    D.    Defendants Are Unjustly Enriched by Their Abuse, Infringement, and
        Violation of Craigslist's Website, Services and Rights ......................................... 8

    E.    Craigslist Is Suffering Monetary and Intangible Injuries From Defendants'
        Actions ................................................................................................................. 9

III.  DISCUSSION ........................................................................................................... 9

    A.    Craigslist Is Entitled to Default Judgment .......................................................... 10

        1.    Prejudice to craigslist ............................................................................ 10

        2.    Merits of the Substantive Claims and Sufficiency of the Complaint ........ 11

            a.    Copyright infringement, 17 U.S.C. § 101, et seq......................... 11

            b.    Digital Millennium Copyright Act violation, 17 U.S.C.
                § 1201, et seq ............................................................................. 12

            c.    Computer Fraud and Abuse Act violation, 18 U.S.C. § 1030....... 13

            d.    Cal. Pen. Code § 502 violation.................................................... 13

            e.    Breach of contract and inducing breach of contract..................... 14

            f.    Intentional interference with contractual relations........................ 14

            g.    Fraud .......................................................................................... 15

            h.    Defendants' violations were knowing, deliberate,
                intentional, willful, and undertaken with conscious disregard
                for craigslist's rights.................................................................. 16

        3.    Sum of Money at Stake ............................................................................ 16

        4.    The Possibility of Disputed Material Facts and Whether Default
            was Due to Excusable Neglect ................................................................. 17

        5.    Policy Favoring Decisions on the Merits ................................................. 17

    B.    Craigslist Is Entitled to Appropriate Relief......................................................... 17

        1.    Injunctive Relief Is Appropriate and Necessary ...................................... 17

        2.    Monetary Damages Are Also Appropriate and Necessary ....................... 18

            a.    Award of Copyright Act statutory damages................................. 19

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

b.    Award of liquidated damages for breach of contract under
craigslist's TOU .......................................................................... 20

4

3.    An Order Directing the Transfer of Defendants' Domain Names
That are Used to Harm craigslist Is Appropriate and Necessary ............. 22

5

C.    Craigslist Is Entitled to Attorneys' Fees and Costs............................................. 23

6    IV.    CONCLUSION ............................................................................................................. 24

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2
Page

3
CASES

4
*3A Entm't Ltd. v. Constant Entm't, Inc.*, No. C 08-01274 JW, 2009 WL 248261
5
   (N.D. Cal. Jan. 30, 2009) ................................................................................. 17

6
*Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995) ............................................. 9

7
*Arista Records, Inc. v. Beker Ent., Inc.*, 298 F. Supp. 2d 1310 (S.D. Fla. 2003)......... 10, 16, 18, 19

8
*Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371
   (Cal. App. 1990).............................................................................................. 14

9
*Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106
10
   F.3d 284 (9th Cir. 1997), *rev'd on other grounds Feltner v. Columbia Pictures
   Television, Inc.*, 523 U.S. 340 (1998) ............................................................... 10

11
*Coxcom Inc. v. Chaffee*, 536 F.3d 101 (1st Cir. 2008)................................................. 23

12
*craigslist v. Hubert,* No. 08-05067 JW (April 15, 2010) ............................................. 12

13
*craigslist, Inc. v. Naturemarket, Inc.* 694 F. Supp. 2d 1039 (N.D. Cal. 2010) ............. 21

14
*Cybersell v. Cybersell*, 130 F.3d 414 (9th Cir. 1997) ................................................. 10

15
*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ........................................... 10, 16, 17

16
*Elektra Enter. Group v. Avery*, 2007 WL 2023545 (E.D. Cal. July 11, 2007) ............. 10

17
*Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780, 2010 WL 3291750
18
   (N.D. Cal. July 20, 2010) ................................................................................. 14

19
*Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002)......................... 5, 9, 16

20
*Fallaci v. New Gazette Literacy Corp.*, 568 F. Supp. 1172 (S.D.N.Y. 1983) ............... 16

21
*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)......................... 11

22
*Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392 (9th Cir. 1986)........ 10

23
*Jackson v. Sturkie*, 255 F. Supp. 2d 1096 (N.D. Cal. 2003) ...................................... 18

24
*MDY Indus. LLC, v. Blizzard Enter't, Inc.*, No. 09-15932 (9th Cir. Dec. 14, 2010) ..... 2

25
*Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874 (S.D. Ohio 2007) ................... 9, 16, 19, 23

26
*Molnar v. 1-800-Flowers.com, Inc.*, No. 08-Cv-0542, 2008 WL 4772125 (C.D.
   Cal. Sept. 29, 2008).......................................................................................... 14

27
*MySpace, Inc. v. The Globe.com, Inc.*, No. CV 06-3391, 2007 WL 1686966 (Feb.
28
   27, 2007 C.D. Cal.) .......................................................................................... 20

**TABLE OF AUTHORITIES**
(continued)

Page

*Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004) ........................... 14

*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990) ...................................... 19

*PepsiCo v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) ............................... 10, 11, 17

*PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431 (C.D. Cal. 1999) .................................................. 10

*Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003) ............................................................................................................... 11, 16, 18, 19

*Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14 (1st Cir. 2001) .................................. 23

*Shamblin v. Berge*, 166 Cal. App. 3d 118 (Cal. Ct. App. 1985) ................................................... 14

*Sony Computer Entm't Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957 (N.D. Cal. 2006) .............................................................................................................. 9, 16, 23

*Stomp, Inc. v. NeatO, LLC*, 61 F.Supp.2d 1074 (C.D. Cal. 1999) ................................................ 10

*Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096 (C.D. Cal. 2007) .................................................................................................................... 2, 12, 14

*Utility Consumers' Action Network, Inc. v. AT&T Broadband of Souther Cal., Inc.*, 135 Cal. App. 4th 1023 (2006) ........................................................................................ 20

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................................... 15

*Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062 (N.D. Cal. 1991) ................... 10

**STATUTES**

17 U.S.C. § 101 ....................................................................................................................... 2, 11

17 U.S.C. § 106 ....................................................................................................................... 2, 19

17 U.S.C. § 1201(a)(2) ................................................................................................................. 12

17 U.S.C. § 502(a) ................................................................................................................. 17, 18

17 U.S.C. § 504(c) ........................................................................................................................ 19

17 U.S.C. § 505 ............................................................................................................................ 23

18 U.S.C. § 1030(a)(2)(C) ........................................................................................................... 13

18 U.S.C. § 1030(a)(4) ................................................................................................................. 13

18 U.S.C. § 1030(a)(5)(A) ........................................................................................................... 13

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3

**REGULATIONS AND RULES**

4

Fed. R. Civ. P. 55(a)...........................................................................................................9

5

6

**OTHER AUTHORITIES**

Cal. Pen. Code § 502...............................................................................................2, 13, 14

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-v-

MOTION FOR DEFAULT JUDGMENT
CASE NO. CV 09 4738 JW

TO THE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 7, 2011, at 9:00 a.m. or as soon thereafter as the matter may be heard before the Honorable James Ware, in the Courtroom of the United States District Court for the Northern District of California, Courtroom 8, 4th Floor, at 280 South 1st Street, San Jose, CA 95113, plaintiff craigslist, Inc. will, and hereby does, move the Court for default judgment against defendants Shui Yung Richard Tse, aka Eddie Temple ("Temple") and Eddie Temple Promotions Limited (collectively "Defendants").  The Clerk of the Court entered the default of Defendants on December 9, 2010.

craigslist, Inc. is entitled to judgment against Defendants on each of the claims pled in the Second Amended Complaint.  craigslist, Inc. requests that this Court (1) enter a permanent injunction against Defendants restraining them from engaging in future violations of craigslist, Inc.'s rights; (2) award craigslist damages in an amount according to proof; (3) order the transfer of domain names used to infringe upon craigslist's rights; and (4) award craigslist its reasonable attorneys' fees and costs incurred in this action.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof, the supporting declarations with exhibits of Jeremy Buxbaum, David Weeks and James McCullagh filed concurrently herewith, and the pleadings and files in this action, and such other matters as may be presented at the hearing.

DATED:  December 16, 2010

**PERKINS COIE** LLP

By: /s/ James McCullagh
Brian Hennessy (SBN 226721)
BHennessy@perkinscoie.com
Elizabeth L. McDougall
(WA Bar No. 27026) (*pro hac vice*)
EMcDougall@perkinscoie.com
James R. McCullagh
(WA Bar No. 27744) (*pro hac vice*)
JMcCullagh@perkinscoie.com

Attorneys for Plaintiff
craigslist, Inc.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR DEFAULT JUDGMENT**

## I.     INTRODUCTION AND PROCEDURAL HISTORY

After filing its initial motion for default judgment in October 2010, craigslist learned that defendants Shui Yung Richard Tse, aka Eddie Temple ("Temple") and Eddie Temple Promotions Limited (collectively "Defendants") had registered and were operating a website for the purpose of stealing craigslist user log in credentials.  As a result of this newly discovered information craigslist requested the transfer of domain names used by Defendants to injure craigslist.  The Court dismissed the then pending motion for default judgment as premature because the First Amended Complaint did not include a prayer for relief that sought the transfer of domain names.  craigslist amended the complaint, served Defendants, and default has again been entered against them.  The following Motion for Default Judgment closely tracks the previously filed motion for Default Judgment (DE 42), but as a result of the amended allegations and prayer for relief contained in the Second Amended Complaint ("SAC"), this motion for default judgment also requests the transfer of craigslist-related domain names and a request for increased copyright infringement damages.[1]

On October 5, 2009 and after other efforts to get Defendants to stop their injurious activities were unsuccessful, craigslist filed a Complaint against Eddie Temple d/b/a/ craigspimp.com and Shadydollars.com and Does 1-25 for (1) Copyright Infringement, 17 U.S.C. § 101 *et seq.*; (2) violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.*; (3) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (4) violation of Cal. Pen. Code § 502; (5) Breach of Contract; (6) Inducing Breach of Contract; (7) Intentional Interference with Contractual Relations; and (8) Fraud.  Electronic Case Filing Docket Entry ("DE") 1.

---

[1] craigslist's original motion for default judgment relied on authority holding that the creation of a cache copy of a copyright-protected website constituted copyright infringement.  *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096, 1111-12 (C.D. Cal. 2007).  On December 14, 2010, the Ninth Circuit held that the process of copying copyrighted software into a computer's RAM memory does not give rise to a copyright claim that is based on exceeding the scope of a license, and there must be a nexus between the complained of act and the licensor's exclusive rights of copyright as set forth in 17 U.S.C. section 106.  *MDY Indus. LLC, v. Blizzard Enter't, Inc.*, No. 09-15932 (9th Cir. Dec. 14, 2010).  Based on this ruling, craigslist requests damages for copyright infringement in this motion based solely on Defendants' unauthorized copying and display of craigslist's copyrighted material on Defendants' craigspimptutorial.com and craigslistsecurity.com websites.

1    Defendants registered and used a series of websites, including craigspimp.com,

2  craigspimptutorisal.com, craigsguide.com, and craigslistsecurity.com ("infringing websites"), to

3  abuse craigslist by operating a fake craigslist website ("phishing website") and by soliciting and

4  paying people ("Affiliate Posters") to post multiple false and misleading advertisements on

5  craigslist's website.  SAC ¶¶ 77-81; 84; DE 42 (Supplemental Memorandum in Support of

6  Motion for Default Judgment).  Defendants profited handsomely from the scheme, which

7  cluttered craigslist with fraudulent ads and thereby impaired the utility and efficacy of craigslist's

8  services for legitimate users, imposed undue costs and burdens on craigslist's resources and

9  personnel, and harmed craigslist's reputation and goodwill.  *Id*. ¶ 101.

10    Despite receiving an email copy of the summons and complaint on or about October 15,

11  2009, Temple refused to accept service by email.  Instead, he publicly reassured his Affiliate

12  Posters that the lawsuit would have no effect on his scheme, and continued to victimize craigslist

13  while purposefully hiding his true identity and location.  Declaration of Jeremy Buxbaum

14  ("Buxbaum Decl.") ¶ 3, Ex. A; Declaration of David Weeks ("Weeks Decl.") ¶ 3, Ex. A.

15    craigslist was initially unable to locate and serve Temple, and consequently, on February

16  1, 2010, craigslist moved the Court to permit it to conduct discovery to obtain information that

17  would help it locate Temple and identify additional defendants.  DE 8.  On February 9, 2010, the

18  Court denied that motion.  On March 25, 2010, after additional efforts to locate Temple were

19  unsuccessful, craigslist requested permission to serve Temple by email.  DE 16.  While the

20  motion for email service was pending, craigslist learned that Eddie Temple was an alias for Shui

21  Yung Richard Tse, and that the infringing websites were registered to Tse's company Eddie

22  Temple Promotions Limited, for which "Eddie Temple" was listed as CEO.  Buxbaum Decl. ¶ 4.

23    On May 14, 2010, craigslist filed a First Amended Complaint naming Shui Yung Richard

24  Tse, aka Eddie Temple, and Eddie Temple Promotions LTD as defendants.  DE 20.  On May 20

25  and 21, 2010, craigslist served Temple both personally and pursuant to the Court's May 20 order

26  permitting service on Temple by email. DE 21, 22, 24.  Temple then contacted craigslist and

27  craigslist attempted to conduct discovery and briefly discussed settlement with Temple.

28  Buxbaum Decl. ¶ 5.  Temple remained defiant and refused to respond to craigslist's requests or

1   participate in this litigation.  Buxbaum Decl. ¶ 6.  craigslist requested entry of default against

2   Temple, which was granted on June 18, 2010.  Buxbaum Decl. ¶ 7; DE 25, 29.

3        On June 23, 2010, the court set September 20, 2010 as the hearing date for craigslist's

4   Motion for Default Judgment.  Because craigslist had not been allowed the opportunity to

5   discover the full extent of Temple's acts, on July 6, 2010, craigslist requested leave to conduct

6   third party discovery in order to develop evidence of damages.  DE 32.  On August 13, 2010, the

7   Court granted craigslist's request for discovery and continued the hearing date for craigslist's

8   Motion for Default Judgment until November 15, 2010.  DE 34, 35.  After filing its Motion for

9   Default Judgment, craigslist learned that Defendants were operating a phishing website at

10  craigslistsecurity.com that was designed to mimic the appearance of craigslist's log in webpage in

11  order to trick people into providing Defendants with their email address and password.  Weeks

12  Decl. ¶ 3, Exs. I, J.  craigslist promptly submitted a supplemental memorandum detailing

13  Temple's continuing targeting of craigslist and requested the transfer of the infringing domain

14  names to craigslist.  DE 42.

15       At the hearing, the Court was sympathetic to craigslist's plight, but indicated that it could

16  not order the transfer of the domain names because that relief was not expressly requested in the

17  First Amended Complaint.  The Court then denied the motion as premature, and granted craigslist

18  leave to amend its complaint to add an additional request for relief to its Prayer.  DE 46.

19  craigslist promptly filed its SAC and served Defendants by email and mail on November 19,

20  2010.  DE 47, 48.  Temple acknowledged receipt of the SAC and on December 9, 2010, default

21  was again entered when Defendants failed to respond.  *See* DE 48 (Declaration of Service) ¶ 6,

22  Exs. C and D; DE 49, 51.

23       craigslist now moves for entry of default judgment pursuant to Rule 55 of the Federal

24  Rules of Civil Procedure.  craigslist requests that the Court enter default judgment for liability on

25  all claims, issue a permanent injunction to stop and prevent Defendants and their agents from

26  continuing their injurious craigslist activities, award damages to craigslist under the copyright

27  infringement and breach of contract causes of action, order the transfer of the domain names

28  owned or operated by Defendants that contain "cl," "craig" or "craigslist" or that are used for

1   purposes that violate the terms of the permanent injunction entered by the Court in this litigation,

2   and award attorneys' fees and costs to craigslist.

3   **II.    FACTUAL BACKGROUND2**

4   **A.    Craigslist's Copyright Protected Website and TOU**

5   craigslist owns and operates the website www.craigslist.org, which provides, *inter alia*, an

6   Internet-based local classified ad forum and service.  SAC ¶¶ 23-29.  The craigslist website

7   allows users to post classified ads on webpages for a particular geographic area and within a

8   specific category of products or services within that geographic area.  *Id.*  craigslist owns

9   copyrights in and to its website, including, but not limited to, the post to classifieds, account

10  registration and account log in expressions and compilations.  SAC ¶ 67-69.

11  To restrict access to its webpages and protect its services, craigslist requires users to agree

12  to its online Terms of Use ("TOU"), and employs technological security measures to enforce the

13  TOU and to prohibit unauthorized access and use of craigslist webpages and services.  SAC

14  ¶¶ 30-36; 43-61.  Furthermore, the TOU explicitly state that "[b]y using the Service in any way,

15  you are agreeing to comply with the TOU."  DE 47, Ex. A, ¶ 1.

16  **B.    Craigslist Security Measures**

17  craigslist employs a number of technological security measures to control access and use

18  of its website and services, including, but not limited to, the Complete Automated Public Turing

19  test to tell Computers and Humans Apart ("CAPTCHA").  SAC ¶¶ 49-61.  craigslist employs the

20  CAPTCHA security device to control users' access to portions of the craigslist website for posting

21  content and creating accounts.  SAC ¶¶ 53-54.  When a user seeks access to these webpages, the

22  user is presented with a challenge-response test that appears in the form of a box containing

23  partially obscured characters that the user must type into a separate box — this is the CAPTCHA.

24  SAC ¶ 55.  If the CAPTCHA is not timely solved, the user is denied access to these sections of

25

26

27  _____

    [2] As further explained in the Discussion section below, it is well established law that where default

28  has been entered, all well-pled factual allegations of the complaint are taken as true.  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

craigslist's website.  SAC ¶ 56.  craigslist also employs other security measures to limit the

number of ads that can be posted from a single IP address[3] or email address.  Buxbaum Decl. ¶ 9.

**C.    Defendants' Abuse, Infringement, and Violation of Craigslist's Website, Services and Rights**

      **1.    Defendants' Services That Violate craigslist's Website, Services and Rights**

Among other wrongful activities, Defendants developed, perpetrated, and profited from directing others to post thousands of fraudulent ads in multiple categories and multiple geographic areas on craigslist, in violation of the TOU.  SAC ¶¶ 77-88.  Defendants' scheme involved paying people to post fake advertisements on craigslist that pretended to be from a woman seeking a relationship or encounter with men.  SAC ¶¶ 84-85; Weeks Decl. ¶ 3, Ex. B. Persons responding to these ads were tricked through one or more fraudulent emails to visit and subscribe to an adult dating website under the guise that this was required in order to verify the users' identity in advance of meeting in person.  SAC ¶¶ 86- 88.  Weeks Decl. ¶ 3, Ex. B. Defendants were paid for the traffic that they were responsible for routing to the adult dating websites.  SAC  ¶ 88.  Defendants paid the people that posted the fake ads in a variety of ways including paying for each response that was received.  Weeks Decl. ¶ 3, Ex. B.  While Defendants profited from this fraudulent scheme, craigslist was damaged each time users were deceived by fraudulent ads posted on craigslist.  Buxbaum Decl. ¶ 10; SAC ¶ 88; 101-109.

As part of their training manual for Affiliate Posters, Defendants created and displayed portions of craigslist's copyrighted website.  SAC ¶ 91, 113; Weeks Decl. ¶ 3, Ex. B. Defendants' copying of craigslist's copyright-protected material was unauthorized.  SAC ¶¶ 92- 94, 115.

On June 10, 2010, some 8 months after craigslist filed this lawsuit, Defendants registered the domain name craigslistsecurity.com for the purpose of operating a craigslist phishing website to trick people into divulging their craigslist login credentials.  Weeks Decl. ¶ 3, Exs. I, J. Defendants copied significant portions of craigslist's login webpage and displayed that information on craigslistsecuirty.com along with false statements that craigslist was working to

---

[3] An Internet Protocol ("IP") address is a unique number that is assigned to each computer or device that is on the internet.  Buxbaum Decl. ¶ 8.

improve security on its website and that the upgrade required all users to verify their accounts to "prevent [their] account from being disabled."  Weeks Decl. ¶ 3, Ex. I.  In addition to copying text, Defendants also copied the color scheme, font and overall look and feel of the official craigslist login page.  They even copied the links from craigslist's website which, when selected, directed the user to official craigslist webpages thereby increasing the likelihood that even a suspicious user would be tricked into believing that the craigslistsecuirity.com website was an official craigslist website.  Weeks Decl. ¶ 3 Exs. I, K.

Finally, once a user entered the requested log-in information into craigslistsecurity.com, Defendants took the additional step of falsely confirming that the account had been verified before redirecting the user to the genuine craigslist site.  Weeks Decl. ¶ 3, Ex. L.  As a result, unsuspecting users may never have realized that they just provided their login credentials to Defendants, who then had unfettered access to post ads on craigslist from the user's account or use the information in furtherance of other nefarious schemes.

**2.      Defendants Knowingly and Willfully Violated craigslist's Rights**

Just as there can be no mistake that Defendants' theft of craigslist log-in credentials through the use of craigslistsecuirty.com was intentional, there can also be no mistake that Defendants knew they were violating craigslist's rights from the very beginning.  For example, through the craigspimp.com website, Defendants disclosed the fraudulent nature of the scheme: "You are posting ads pretending to be a girl seeking a man.  The idea is to get men to respond to your ad" and "Obviously, the more cities you promote in, and the more ads you can post, the more replies you will receive…and the more money you will make.  But Craigslist makes it difficult to post ads in cities far from your geographic location."  Weeks Decl. ¶ 3, Ex. B.  Defendants instructed their Affiliate Posters to regularly change their IP addresses and to use multiple email addresses to post ads on craigslist, in circumvention of craigslist's security measures.  Weeks Decl. ¶ 3, Ex. C.  Defendants acted with complete disregard for craigslist's rights, at one point stating on one of their websites, in reference to their Internet "marketing" business, "Look, this stuff isn't ethical...it's definitely not nice…and some of it is just barely legal. But it works. It works fast."  Weeks Decl. ¶ 3, Ex. D.

MOTION FOR DEFAULT JUDGMENT
CASE NO. CV 09 4738 JW

1    Furthermore, craigslist made three separate attempts to contact Temple in November and

2    December of 2008 and demanded that he cease his wrongful activity immediately.  Buxbaum

3    Decl. ¶¶ 11, 12; Ex. A.  Despite these repeated attempts to have Defendants stop their injurious

4    activities, they continued unabated.  On October 5, 2009, craigslist filed the Complaint in this

5    action.  DE 1.  Shortly thereafter, Temple contacted craigslist, acknowledged receiving the prior

6    cease and desist letters as well as the Complaint and refused to stop his activity stating: "sue me

7    all you want" and "keep on wasting your money."  Buxbaum Decl. ¶ 13, Ex. A.

8    Defendants, believing that they had completely concealed their true identity and location

9    then refused to accept service by email by stating: "I don't accept summons by email; you will

10   need to serve me in person." Buxbaum Decl. ¶ 14; Ex. A.  Indeed, Defendants then continued to

11   operate craigspimp.com and reassured their Affiliate Posters that they had no intention to stop

12   craigspimp.com or its related schemes.  Weeks Decl. ¶ 3; Ex. A.

13   Eventually craigslist identified and served Defendants, who thereafter appeared to

14   temporarily stop their craigslist activity by directing the craigspimp.com domain name to

15   craigslist's TOU.  Buxbaum Decl. ¶ 15.  But to this day, Defendants have refused to transfer the

16   craigspimp.com and other craigslist related domain names to craigslist and they continue to

17   remain in control of the infringing websites.  Buxbaum Decl. ¶ 16, Ex. B.  Indeed, Defendants

18   recently reactivated the craigspimp.com domain.  Buxbaum Decl. ¶ 17.

19   There can be no mistake that Defendants' actions were knowing and willful.

20   **D.    Defendants Are Unjustly Enriched by Their Abuse, Infringement, and Violation of Craigslist's Website, Services and Rights**

21   Defendants refusal to participate in this litigation has significantly disadvantaged

22   craigslist's ability to discover and recover damages attributable to the full extent of Defendants'

23   conduct.  Buxbaum Decl. ¶ 18.  However, the evidence that craigslist has obtained shows that

24   Defendants profited handsomely from their illegal endeavors.  On their websites Temple boasts

25   that he made over $4,582,700 using his techniques.  Weeks Decl. ¶ 3, Ex. E.  He also stated: "…I

26   make over $25,000 per month just posting little classified ads" and "thousands of people around

27   the world use [craigspimp.com] to make an extra $250-$500/day posting ads on [c]raigslist."

28

1    Weeks Decl. ¶ 3, Exs. E, A.  Even the partial and admittedly incomplete financial records that

2    craigslist was able to obtain show that just one of the accounts used by Defendants to process

3    payments recorded over $400,000 in transactions in less than 2 years.  Weeks Decl. ¶ 8, Ex. M.

4    **E.    Craigslist Is Suffering Monetary and Intangible Injuries From Defendants' Actions**

5            craigslist has suffered and continues to suffer monetary losses for the increased

6    equipment, bandwidth, and personnel required to maintain the efficacy of its systems and services

7    when they are flooded with unauthorized posts for which Defendants and their services are

8    responsible.  SAC ¶¶ 101-104.  More importantly, craigslist has suffered harm to its reputation

9    and goodwill as a result of Defendants' disruption of the proper functioning of craigslist's services

10   for legitimate users.  SAC ¶¶ 105-106.  Defendants encouraged and enabled those working for

11   them to violate craigslist's terms, copyrights, and other legal rights.  SAC ¶ 84.  Moreover,

12   Defendants offered automated posting and CAPTCHA circumvention products and services to

13   their workers to enable them to auto-post hundreds of ads on craigslist and unfairly compete

14   against legitimate users in craigslist marketplaces.  Weeks Decl. ¶ 3, Ex. F.  craigslist is founded

15   on fairness and simplicity in operation.  SAC ¶ 29.  When Defendants disrupt these pillars,

16   craigslist no longer operates like it should, and users become frustrated.  SAC ¶ 74-76; 106.

17                                    **III.    DISCUSSION**

18           Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against

19   whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

20   failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ.

21   P. 55(a).  After a defendant's default is entered by the court, the well-pled factual allegations of

22   the complaint are taken as true.  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir.

23   2002); *see also Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 878 (S.D. Ohio 2007), *citing*

24   *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995) (holding that once a default is

25   entered against a defendant, "that party is deemed to have admitted all of the well pleaded

26   allegations in the complaint").  Where the factual allegations of the complaint provide a sufficient

27   legal basis for entry of a default judgment, the court then conducts an inquiry to ascertain the

28   amount of damages.  *See Sony Computer Entm't Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957

(N.D. Cal. 2006); *see also Arista Records, Inc. v. Beker Ent., Inc.*, 298 F. Supp. 2d 1310, 1311-12 (S.D. Fla. 2003).

## A.     Craigslist Is Entitled to Default Judgment

The Ninth Circuit has enumerated the following factors for a district court to consider when determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "In applying this discretionary standard, default judgments are more often granted than denied."  *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).  In this case, the enumerated factors weigh heavily in favor of granting default judgment and awarding craigslist injunctive and monetary relief.[4]

### 1.     Prejudice to craigslist

As to factor one, craigslist would unquestionably suffer prejudice if the default judgment is not entered because craigslist would be without recourse to prevent Defendants, their employees, representatives, and agents from infringing craigslist's rights in the future and without recourse to recover for the harm and damages Defendants have caused craigslist already.  *See PepsiCo v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("[p]otential prejudice to [plaintiff] favors granting a default judgment."); *Elektra Enter. Group v. Avery*, 2007 WL 2023545, at *1 (E.D. Cal. July 11, 2007) (recognizing that plaintiff would be denied the right to

---

[4] As alleged in the SAC, this Court has jurisdiction over craigslist's claims.  First, the Court has jurisdiction under the Ninth Circuit standard for personal jurisdiction.  Defendants availed themselves of California by selling products and services on-line that were available to California residents; they knowingly infringed the copyrights of a California based company; and the Court's jurisdiction is reasonable.  *See Cybersell v. Cybersell*, 130 F.3d 414, 419 (9th Cir. 1997), *Stomp, Inc. v. NeatO, LLC*, 61 F.Supp.2d 1074, 1078 (C.D. Cal. 1999), *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 (1998); *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir. 1986).  Second, the Court has jurisdiction because Defendants agreed to craigslist's TOU, which identify California as the appropriate forum for this suit.  *See* SAC ¶¶ 95, 97; Ex. A (TOU) ¶ 18; *see also Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1069 (N.D. Cal. 1991).

1    judicial resolution of the claims presented and would be without recourse for protection of its

2    intellectual property rights if default judgment was not granted).

3            **2.        Merits of the Substantive Claims and Sufficiency of the Complaint**

4            *Eitel* factors two and three (merits of plaintiff's substantive claim and sufficiency of the

5    complaint) simply "require that a plaintiff state a claim on which [it] may recover." *Cal. Sec.*

6    *Cans.*, 238 F. Supp. 2d at 1175 (citations and quotations omitted); *see also Philip Morris USA*

7    *Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). craigslist's SAC provides

8    detailed factual allegations in support of each element of the alleged causes of action, and states a

9    claim as to all of them.

10           **a.        Copyright infringement, 17 U.S.C. § 101, et seq.**

11           To demonstrate copyright infringement, a plaintiff need only show:  (1) ownership of a

12   valid copyright; and (2) copying of original elements of the work. *Feist Publications, Inc. v.*

13   *Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

14           craigslist's website and specifically its ad submission and account creation features are

15   works of authorship protected by craigslist's registered copyrights. SAC ¶¶ 66-69, 111.

16   Defendants are liable for copyright infringement for copying craigslist's login page and using and

17   displaying that copyright-protected material on their craigslistsecurity.com page. SAC ¶ 113. As

18   discussed above, Defendants operated a phishing website at craigslistsecurity.com, where they

19   copied significant portions of craigslist's login webpage, including text, color scheme, font and

20   overall look and feel of the official craigslist login page. *See* DE 42; Weeks Decl. ¶ 3, Exs. I, K.

21   Furthermore, as part of their detailed instructions to Affiliate Posters, Defendants included

22   unauthorized copies of the craigslist website in certain promotional and training materials.

23   Weeks Decl. ¶ 3, Ex. B (containing copies of portions of the craigslist website as part of

24   Defendants' instruction manual for Affiliate Posters). Defendants' copies and/or derivative

25   works are substantially similar to craigslist's original copyright-protected website. SAC ¶ 114.

26   The copies and/or derivative works created by Defendants are unauthorized. SAC ¶ 115. The

27   SAC thus states a claim for copyright infringement.

28

**b.      Digital Millennium Copyright Act violation, 17 U.S.C. § 1201, et seq.**

As explained in the SAC, craigslist users must solve a CAPTCHA before they are able to access copyrighted portions of the craigslist website for posting content and creating accounts. SAC ¶¶ 53-56.  As alleged in the SAC, Defendants circumvented craigslist security measures to assist them or their affiliates in posting ads on craigslist.  SAC ¶¶ 89, 122-131.  Specifically, Defendants offered their Affiliate Posters a copy of EasyAdPosterDeluxe, a software program used for auto-posting and CAPTCHA circumvention.  Weeks Decl. ¶ 3, Exs. F, H.  Defendants also offered to buy their Affiliate Posters unlimited CAPTCHA credits, allowing them to circumvent craigslist security measures an unlimited number of times.  Weeks Decl. ¶ 3, Ex. F. These CAPTCHA circumvention devices that Defendants offered to distribute to craigspimp users enable users' unauthorized access to the posting and account creation portions of the craigslist website that they could not otherwise access without individually and manually solving the CAPTCHAs.  SAC ¶¶ 89, 122-131.

Indeed, these products and services were designed and produced specifically and primarily to circumvent craigslist's CAPTCHA security measures in order to enable users to access portions of the website that they otherwise could not; they have no commercially significant purpose or use other than to circumvent these security measures; and they were offered by Defendants for use in circumventing craigslist's CAPTCHA measures.  SAC ¶ 126-128.  The SAC thus states a claim for violation of the DMCA, specifically, 17 U.S.C. § 1201(a)(2).  *See Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096, 1111-12 (C.D. Cal. 2007) (holding plaintiff likely to prevail on claims that defendant's software circumventing plaintiff's requirement that users provide certain information to access copyrighted material violated 17 U.S.C. § 1201(a)(2)); *see also craigslist v. Hubert,* No. 08-05067 JW, Docket Item No. 63 (N.D. Cal., April 15, 2010) (Order Granting Plaintiff's Motion for Default Judgment) (Attached as Weeks Decl. ¶ 9, Ex. N) (awarding statutory damages under the DMCA based on offers of CAPTCHA credits).

1

### c.   Computer Fraud and Abuse Act violation, 18 U.S.C. § 1030

2   Defendants also violated the sections of the Computer Fraud and Abuse Act ("CFAA")

3   alleged in the SAC, 18 U.S.C. § 1030(a)(2)(C) (accessed craigslist's computers without

4   authorization or in excess of authorization and obtained information); 1030(a)(4) (accessed

5   craigslist's computers without authorization or in excess of authorization in furtherance of fraud);

6   1030(a)(5)(A) (accessed craigslist's computers without authorization or in excess of authorization

7   and caused damage).  Defendants intentionally accessed craigslist's computers (involved in

8   interstate commerce) to develop, implement, update, support, test and use their website and

9   services, which were designed to deceive people into visiting and joining adult dating websites.

10   SAC ¶¶ 91-92, 132-139.  Defendants' activities were not authorized or exceeded authorization

11   because they were expressly unauthorized by craigslist's cease and desist demands, and included

12   measures to circumvent craigslist's technological restrictions to control access to and use of its

13   website. Buxbaum Decl. ¶ 19, Ex. A.  There can be no dispute that Defendants knew their

14   activities were unauthorized, that they were aware of craigslist's technical measures to limit

15   access by IP address, that they instructed their Affiliate Posters to regularly change their IP

16   address and to use multiple email accounts to post ads, and that they would have had to test these

17   circumvention measures themselves to ensure their efficacy.  Weeks Decl. ¶ 3, Exs. B (noting that

18   craigslist filters by IP address), C (instructing users to regularly change IP addresses).  The

19   amount of these losses and damages (discussed above) exceed $5,000.  SAC ¶¶ 136-137.

20

### d.   Cal. Pen. Code § 502 violation

21   The SAC establishes liability under Cal. Pen. Code § 502.  Defendants accessed and used

22   the craigslist website without permission in order to obtain information, add information to the

23   craigslist website, and develop, update, operate, and maintain their fraudulent schemes which

24   harmed craigslist (as summarized above).  SAC ¶¶ 91-92, 140-152.  Separate and apart from the

25   notice Defendants received that their access and use of craigslist's services was unauthorized,

26   Defendants' scheme violated craigslist's technological restrictions to control access to its website,

27   including the use of measures that limit the volume of ads posted from a single IP address or a

28   single email address.  Specifically, Defendants instructed their Affiliate Posters to regularly

1   change their IP address and to use multiple email accounts to post ads, and Defendants would

2   have had to test these circumvention measures themselves to ensure their efficacy.  Weeks Decl. ¶

3   3, Ex. C.  Defendants' actions to evade craigslist's access limitations are sufficient to find

4   violations of Cal. Pen. Code § 502.  *See Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780,

5   2010 WL 3291750, at *11-12 (N.D. Cal. July 20, 2010) (finding that "accessing or using a

6   computer, computer network, or website in a manner that overcomes technical or code-based

7   barriers is 'without permission,' and may subject a user to liability under Section 502").

8                       **e.      Breach of contract and inducing breach of contract**

9             The SAC states a claim for breach of contract.  *See Careau & Co. v. Security Pacific*

10  *Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (Cal. App. 1990) (discussing the elements of

11  breach of contract).  The TOU are a contract; Defendants breached them, including sections 7(i)

12  (posting false or deceptive ads), 7(k) (affiliate marketing), 7(m) (linking to commercial websites

13  in categories other than services), 7(x) (unauthorized access to computers and disruptive activity),

14  and 8 (acting as a "Posting Agent," causing content to be posted on behalf of others) and

15  craigslist suffered harm.  SAC ¶¶ 153-166; *see Molnar v. 1-800-Flowers.com, Inc.*, No. 08-Cv-

16  0542, 2008 WL 4772125, at *7 (C.D. Cal. Sept. 29, 2008) (denying motion to dismiss breach of

17  contract claim because "courts have held that a party's use of a website may be sufficient to give

18  rise to an inference of assent to the Terms of Use contained therein"); *Ticketmaster*, 507 F. Supp.

19  2d at 1107 (granting preliminary injunction for breach of contract claim based on use of website

20  outside the terms of use).  Defendants were subject to the TOU because the TOU apply to any use

21  of the craigslist site (SAC, Ex. A, ¶ 1), and Defendants, at a minimum, would have posted ads on

22  craigslist in order to develop and test their scheme, and in so doing explicitly agreed to the TOU.

23  SAC ¶ 91, 95, 158-161.  As previously detailed, Defendants' activities included posting and

24  inducing their Affiliate Posters to post fraudulent ads on their behalf for the purpose of deceiving

25  craigslist and its users into believing that the ads were legitimate.

26                      **f.      Intentional interference with contractual relations**

27            The SAC states a claim for intentional interference with contractual relations.  *See Online*

28  *Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1205 (N.D. Cal. 2004); *Shamblin v. Berge*,

166 Cal. App. 3d 118, 122-23 (Cal. Ct. App. 1985).  The SAC identifies the TOU as valid and existing contracts between craigslist and craigslist users, SAC ¶¶ 30-33, 177-78, and explains Defendants' knowledge of the TOU and Defendants' intent and intentional acts to breach or disrupt the contractual relationship between craigslist and its users by inducing users to use Defendants' craigspimp website to post fake ads in violation of craigslist's TOU.  SAC  ¶¶ 84, 100, 176-183.  The SAC also alleges actual breach or disruption of the TOU contracts when users were induced by Defendants to post fake ads on craigslist in violation of the TOU.  SAC ¶¶ 95-96, 153-166.  And it alleges resulting harm and damage to craigslist.  SAC ¶¶ 101-109, 165, 181.

### g.    Fraud

"Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (quotation and citation omitted).  The SAC establishes each element with particularity.  The SAC alleges false representations and the contents of and parties to the false representations—Defendants' statements to craigslist that they would comply with the TOU when they had no intention of complying and did not comply.  SAC ¶¶ 96, 98-100, 185-187.  The SAC also alleges the times and locations of the misrepresentations — they are each time Defendants assented to the TOU on the craigslist website by clicking the "ACCEPT terms of use" option before creating a user account or posting content and by using the website.  SAC ¶ 96.  The SAC alleges knowledge of the falsity — Defendants knew they had no intention of complying with the TOU when they represented that they would abide by them.  SAC ¶¶ 96, 98, 190-91.  The SAC alleges intent to defraud — Defendants intended to gain unauthorized access to the craigslist website and services to develop, update, operate, and maintain their illicit craigspimp website and program. SAC ¶¶ 98-100, 191-92.  The SAC alleges justifiable reliance—craigslist reasonably relied on Defendants' affirmative assent to the TOU to grant access to the craigslist website and services. SAC ¶ 198.  And the SAC alleges damages — Defendants' fraud has resulted in the posting of thousands of fake ads on craigslist, which has caused and is causing craigslist economic harm to combat as well as intangible reputational harm with legitimate craigslist users.  SAC ¶ 193.

h.   **Defendants' violations were knowing, deliberate, intentional, willful, and undertaken with conscious disregard for craigslist's rights**

Defendants' actions giving rise to the claims pled in the SAC were undertaken knowingly, deliberately, intentionally, willfully, and with conscious disregard for craigslist's rights (referred to collectively as "willfully" or "willfulness" below for simplicity). The allegations of the SAC, which are taken as true, establish this willfulness. *See* SAC ¶¶ 98; 118; 163; *see also Fair Housing of Marin v. Combs.*, 285 F.3d 899, 906 (9th Cir. 2002). Moreover, willfulness can be inferred from a defendant's failure to defend. *Castworld Prods.,* 219 F.R.D. at 500; *see Fallaci v. New Gazette Literacy Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983); *Arista Records, Inc.*, 298 F. Supp. 2d at 1313 (the court may infer willful infringement because of default). In this case, willfulness may and should also be inferred from Defendants' efforts to conceal their identity and location - going so far as to use a fictitious name and fictitious addresses.

As alleged in the SAC, Defendants accessed and copied the craigslist site with the intention of violating the TOU. SAC ¶ 96. Defendants also continued their activity after receiving a cease and desist demand in October 2008 and for more than 7 months after being sued. Buxbaum Decl. ¶ 20. SAC ¶¶ 95-96; 158-161. There can be no doubt that Defendants deliberately, willfully, and intentionally violated the law and harmed craigslist. *See Microsoft Corp. v. McGee*, 490 F. Supp. 2d at 878 (on default, court looked to allegations in complaint and held that defendant willfully violated Copyright Act); *Divineo*, 457 F. Supp. 2d 957 (same).

3.   **Sum of Money at Stake**

As for the fourth *Eitel* factor, the sum of money at stake is not inconsequential, but neither is the harm caused by Defendants' knowing and deliberate abuse of craigslist and Defendants' efforts to conceal their identify and location. Defendants' misconduct has cost craigslist a substantial amount of resources for the increased equipment, bandwidth, and personnel required to maintain the efficacy of its systems and services when they are flooded with unauthorized posts for which Defendants and their services are responsible. Moreover, Defendants' deliberate concealment and refusal to stop their wrongful activity even after receiving multiple written demands from craigslist, and their unwillingness to participate in this litigation, required craigslist

1   to expend substantial resources to sue, identify and locate them, along with the resources required

2   to seek a default judgment with limited information.

3       **4.      The Possibility of Disputed Material Facts and Whether Default was Due to
                Excusable Neglect**

4

5           Pursuant to the fifth and sixth *Eitel* factors, there is virtually no possibility of a dispute as

6   to material facts or of excusable neglect for the default in this case.  *See Castworld Products*, 219

7   F.R.D. at 500-01.  The factual allegations of the SAC, now admitted, and the supporting evidence

8   provided in the declarations and exhibits with this motion show — with no room for

9   equivocation — that Defendants engaged in the acts alleged.  Defendants were served with the

10  SAC, acknowledged receipt of the SAC, and communicated with craigslist's counsel.  DE 48.

11  There is no evidence that Defendants' default is due to excusable neglect.

12      **5.      Policy Favoring Decisions on the Merits**

13          As for the seventh *Eitel* factor (policy in favor of decisions on the merits), Defendants'

14  refusal to appear, respond, or otherwise defend against craigslist's complaint, as well as their

15  active efforts to hide, makes a resolution on the merits impossible.  *Cal. Sec. Cans.*, 238 F. Supp.

16  2d at 1177 ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is

17  allowed whenever a defendant fails to defend an action.").

18          Pursuant to *Eitel*, craigslist is entitled to default judgment against Defendants establishing

19  liability on all of the causes of action alleged in the SAC.

20  **B.     Craigslist Is Entitled to Appropriate Relief**

21          With default judgment justified, the Court next conducts an inquiry into appropriate relief,

22  including the amount of damages.  *See*, *e.g.*, *3A Entm't Ltd. v. Constant Entm't, Inc.*, No. C 08-

23  01274 JW, 2009 WL 248261, at *6 (N.D. Cal. Jan. 30, 2009).  craigslist seeks injunctive and

24  monetary relief, and an order directing transfer of Defendants' craigslist-related domain names.

25      **1.      Injunctive Relief Is Appropriate and Necessary**

26          At a minimum, craigslist is entitled to injunctive relief pursuant to Defendants' liability

27  for copyright infringement, 17 U.S.C. § 502(a) and breach of contract.  The Court's power to

28  grant a permanent injunction against Defendants and those acting in concert with them is

1    therefore broad.  For example, the Court may "grant temporary and final injunctions on such

2    terms as it may deem reasonable to prevent or refrain from infringement of a copyright."  17

3    U.S.C. § 502(a).  Indeed, courts "regularly issue injunctions as part of default judgments."  *Arista*

4    *Records*, 298 F. Supp. 2d at 1314; *see also Castworld Prods*., 219 F.R.D. at 502; *Jackson v.*

5    *Sturkie*, 255 F. Supp. 2d 1096, 1011 (N.D. Cal. 2003).

6        Defendants developed and marketed the craigspimp service, registered and operated the

7    craigslist phishing website, craigslistsecurity.com, and offered autoposting and CAPTCHA

8    circumventing software that violated craigslist's copyrights and violated the TOU.  SAC ¶¶ 77-

9    100.  They engaged in such conduct despite being fully aware that it violated craigslist's TOU

10   and legal rights.  SAC ¶¶ 98, 100. Defendants' conduct has damaged craigslist, and caused and

11   continues to cause irreparable and incalculable harm and injury to craigslist.  SAC ¶¶ 101-109.

12   As explained in the SAC, hard costs to craigslist to meet the increased burdens on its equipment

13   and personnel from Defendants' conduct are substantial.  SAC ¶¶ 102-104.  Moreover, craigslist

14   has suffered lost reputation and goodwill and has lost users as frustration with the impacts from

15   Defendants' and other's misconduct has grown and craigslist has struggled to stop them.  SAC

16   ¶¶ 105-106.

17       From the onset of this matter Defendants were evasive, using a fictitious name and

18   addresses, and operating with an utter disregard for craigslist's rights.  If not permanently

19   enjoined, they will continue to violate craigslist's rights again.  craigslist therefore requests that

20   the Court enter a permanent injunction against Defendants, and those acting in concert with them,

21   as set forth in the SAC's Prayer for Relief ¶ 1 and as included in the Proposed Order filed with

22   this Motion.

23       **2.    Monetary Damages Are Also Appropriate and Necessary**

24       craigslist has been damaged and Defendants have wrongly profited from their abuse of

25   craigslist.  However, Defendants' refusal to participate in this litigation has severely prejudiced

26   craigslist's ability to quantify the full extent of Defendants' wrongful activity.  Despite the

27   inability of craigslist to present a complete picture of damages, it has nevertheless adduced

28

1   sufficient evidence to establish that it is entitled to statutory damages for Defendants' copyright

2   infringement and damages for their breach of contract.  17 U.S.C. § 504(c).

3                  **a.       Award of Copyright Act statutory damages**

4          The Copyright Act allows a successful plaintiff to elect to recover statutory damages as an

5   alternative to actual damages.  17 U.S.C. § 504(c).  Statutory damages may be especially fitting in

6   default judgment cases, like this one, because information needed to prove actual damages may

7   be within the defendant's control and not disclosed.  *Microsoft Corp.*, 490 F. Supp. 2d at 882.

8   The Copyright Act authorizes statutory damages of up to $30,000 per work for infringement, but

9   if the infringement is willful, the award can be augmented to $150,000.  17 U.S.C. § 504(c).

10  Courts have wide discretion to determine the appropriate level of statutory damages within this

11  range.  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990).

12         As discussed above, Defendants' infringement should be deemed willful, based on the

13  allegations in the SAC and Defendants' failure to defend.  *See Castworld Prods.,* 219 F.R.D. at

14  500 (holding that defendant willfully infringed plaintiff's trademark based on plaintiff's

15  allegations of willful infringement and defendant's "failure to comply with the judicial process or

16  to participate in any way in the present litigation"); *Arista Records,* 298 F. Supp. 2d at 1313 (the

17  court may infer willful infringement because of default).  Thus, given the significant injury

18  resulting from Defendants' infringing activity as well as their willful and deliberate continuing

19  infringement, craigslist is entitled to statutory damages up to $150,000 per infringement.

20         While Defendants' default prevented craigslist from learning the total number of

21  infringements for which Defendants are liable, there can be no doubt that Defendants are liable

22  for at least two acts of infringement: one act of infringement for the unauthorized creation of a

23  derivative work of craigslist's account verification page and its display on Defendants' phishing

24  website at craigslistsecurity.com, which infringed the accounts.craigslist.org 2008 copyright

25  (Reg. No. TX0006866658), and one act of infringement for the unauthorized copying of

26  craigslist's website for the use and display on Defendants' craigspimptutorial.com website, which

27  infringed the Craigslist website 2006 copyright (Reg. No. TX0006866657).  *See* SAC ¶ 69;

28  Weeks Decl. Exs. B, I; 17 U.S.C. § 106 (exclusive rights in copyrighted works).  craigslist

therefore requests an award of $300,000, which represents the maximum statutory damages for just two instances of copyright infringement.

### b.   Award of liquidated damages for breach of contract under craigslist's TOU

Where actual damages are difficult to determine, the parties to a contract are permitted to agree to an amount of liquidated damages. *Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern Cal., Inc.*, 135 Cal. App. 4th 1023, 1028 (2006); *MySpace, Inc. v. The Globe.com, Inc.*, No. CV 06-3391, 2007 WL 1686966 at *10 (Feb. 27, 2007 C.D. Cal.). Under California law, liquidated damages clauses are enforceable where: (1) damages from a breach would be impractical or extremely difficult to determine with certainty; and (2) the amount represents a reasonable estimation of what such damages might be. *Id.*

craigslist recognized that it would often be difficult to quantify actual damages caused by activities that violate its TOU and it therefore included a liquidated damages section in the TOU. SAC, Ex. A ¶ 19. Specifically, the TOU state:

> You understand and agree that, because damages are often difficult to quantify, if it becomes necessary for craigslist to pursue legal action to enforce these Terms, you will be liable to pay craigslist the following amounts as liquidated damages, which you accept as reasonable estimates of craigslist's damages for the specified breaches of these terms:

SAC, Ex. A ¶ 19. Indeed, the damages suffered by craigslist as a result of Defendants' fraudulent posting scheme provide an excellent example of just how difficult it is to quantify damages from certain violations of the TOU. Defendants' activities were widespread and intentionally designed to evade detection by craigslist. Weeks Decl. ¶ 3, Ex. B, C. The posting of fraudulent ads on craigslist improperly consumed craigslist resources that were intended for legitimate ads, clogged certain categories with fraudulent ads, displaced legitimate ads, and tricked innocent craigslist users into visiting adult dating websites and paying for services under the belief that this was required to continue their online discussion with a real person, when in fact the person described in the ad did not exist. Each of these effects impact fundamental aspects of craigslist's business and if not stopped, would have significant and lasting effects on craigslist's business, reputation,

1   and goodwill.  However, these injuries are very difficult to quantify and for that reason, craigslist

2   included, and Defendants agreed to, the liquidated damages provisions contained in the TOU.

3          Through the TOU, the parties agreed that liquated damages of $100 for each ad posted in

4   violation of the TOU was a reasonable estimate of craigslist's damages for the specified breaches.

5   SAC, Ex. A ¶ 19.  In addition, the TOU provide for the same amount of damages for each item

6   that a Posting Agent[5] is responsible for posting, and the Principal who engages the Posting Agent

7   agreed to pay craigslist an additional $100 for each ad posted by the Posting Agent on behalf of

8   the Principal in violation of the TOU.  SAC, Ex. A ¶ 19e.  Because the Affiliate Posters were

9   posting ads for Defendants' benefit the Affiliate Posters are "Posting Agent(s)" under the TOU,

10  and, consequently, Defendants are "Principal(s)" under the TOU.  As such, Defendants are liable

11  for $100 for each ad posted in violation of the TOU and an additional $100 for each ad posted on

12  their behalf by a Posting Agent.  SAC ¶¶ 78-79, 83-84, 171.  Therefore, Defendants are liable for

13  $200 for each ad posted in violation of the TOU.  The additional liquidated damages resulting

14  from the use of one or more Posting Agents is reasonable because it reflects the increased

15  damages and difficulty in identifying and stopping the prohibited behavior caused by having other

16  people post fake ads on behalf of Defendants.[6]

17         As part of the damages discovery authorized by the Court, craigslist received a transaction

18  log for a PayPal account used by Defendants to pay Affiliate Posters.  PayPal was just one of

19  several payment methods used by Defendants and this log alone showed more than $400,000 in

20  activity and 5885 separate payments made to affiliates.  Defendants advertised that they paid

21  Affiliate Posters for each response that was received in response to fake ads that were posted.

22  Weeks Decl. ¶ 3, Ex. B.  The individual amounts per response varied, and ranged from $.05 to

23  $.10 per response.  Weeks Decl. ¶ 3, Exs. F, B.  The PayPal log indicates that affiliate payments

24  were made to a large number of individuals with each payment representing an amount that was

25  greater than the payment for a single response.  Thus, while the number of payments does not

---

26         [5] A "Posting Agent," is a third-party agent that offers to post Content on behalf of others.  SAC, Ex. A ¶ 8.

27         [6] *See craigslist, Inc. v. Naturemarket, Inc.* 694 F. Supp. 2d 1039, 1046-47, 1064 (N.D. Cal. 2010)

28  (awarding plaintiff $840,000 in liquidated damages based on $200 in liquidated damages for every ad posted).

1    reveal the precise number of ads posted by Affiliate Posters, it is likely that many of the payments

2    included responses to more than one ad and that some ads received no responses at all.  As a

3    result, a very conservative estimate of the number of ads posted is derived by assuming that each

4    payment represents a minimum of at least one fraudulent ad posted on craigslist.  This estimate of

5    5885 ads is also a conservative estimate because Defendants used several other payment

6    processors to pay Affiliate Posters, but, craigslist was unable to obtain complete financial

7    information given the limited discovery to which it had access.  Weeks Decl. ¶ 3, Ex. B.

8            Despite the admittedly incomplete information, craigslist has presented evidence to

9    support an award of $1,177,000 (5885 ads x $200 per ad) as liquidated damages for Defendants'

10   breach of contract.  While significant, this amount is reasonable given both Defendants' wide

11   ranging fraud as well as Temple's own admission some 12 months prior to temporarily stopping

12   his activities that he had already made $4,582,700 using his techniques.  Weeks Decl. ¶ 3, Ex. E.

13          **3.      An Order Directing the Transfer of Defendants' Domain Names That are
                      Used to Harm craigslist Is Appropriate and Necessary**

14          Despite craigslist's significant efforts to stop Defendants from continuing their injurious

15   activity, they have persisted.  Temple's residence outside the United States and Defendants'

16   registration and use of the craigslist phishing website craigslistsecurity.com some 8 months after

17   craigslist filed this lawsuit also raise the likelihood that Defendants may not comply with the

18   terms of a permanent injunction without additional enforcement activity.  It is very likely that

19   Defendants will continue to exacerbate the harm to craigslist by continuing to use the craigslist

20   related websites.  When confronted with similar situations, courts have used their inherent

21   authority and ordered the transfer of the domain names used by the defendant.  *See Xcentric*

22   *Ventures, L.L.C. v. Elizabeth Arden*, No. 2:08-cv-2299-HRH, Judgment (D. Ariz. October 22,

23   2009) (attached as Weeks Decl. ¶ 10, Ex. O).  In addition to enjoining the defaulting defendant

24   from using plaintiff's trade name or copyrighted material, the *Xcentric Ventures* court ordered (1)

25   the company hosting the website that contained the complained of content to terminate services

26

27

28

1    for the website until the content was removed, and (2) the transfer of the offending domain name

2    to the plaintiff.[7]  *Id.*

3         craigslist requested the transfer of these exact domain names in the SAC and Defendants

4    chose not to defend, thereby acquiescing to an order consistent with craigslist's prayer.  SAC,

5    Prayer for Relief ¶ 6.  Furthermore, the registrars of Defendants' craigslist related domain names

6    have agreed that they will comply with a court order directing the cancellation, transfer or change

7    in domain names.  craigslist therefore requests that in addition to enjoining Defendants from

8    conducting any craigslist-related activities the Court also order the transfer of domain names used

9    by Defendants to perpetrate their craigslist-related schemes, including craigspimp.com,

10   craigspimptutorial.com, craigsguide.com, and craigslistsecurity.com.

11   **C.    Craigslist Is Entitled to Attorneys' Fees and Costs**

12        Last, craigslist asks the Court to award its attorneys' fees and costs for pursuit of this

13   action.  Attorneys' fees and costs may be awarded to craigslist under the Copyright Act, 17

14   U.S.C. § 505.  Because Defendants concealed their identities and refused to comply with

15   craigslist's demands to stop their fraudulent activity, craigslist had no option but to file this

16   action.  craigslist was then required to expend substantial time and resources to investigate,

17   discover and name Shui Yung Richard Tse, aka Eddie Temple and Eddie Temple Promotions

18   LTD as craigspimp.com's true operators and the proper defendants in this case.  With Defendants'

19   unqualified default, craigslist has prevailed.  Courts have awarded attorneys' fees and costs in

20   similar circumstances.  *See Microsoft Corp. v. McGee*, 490 F. Supp. 2d at 883; *Divineo*, 457 F.

21   Supp. 2d at 967; *Coxcom Inc. v. Chaffee*, 536 F.3d 101 (1st Cir. 2008).

22        The time and effort expended by craigslist's attorneys in this matter were significant and

23   directly related to Defendants' intentional conduct, refusal to cease their illegal activities, and

24

_____

25        [7] All domain name registrars for .com top level domains agree to comply with the provision of the Uniform Domain Name Dispute Resolution Policy.  *See Balsam v. Tucows, Inc.*, No. CV 09-03585, 2009 WL 3463923, at *1 (N.D. Cal. Oct. 23, 2009) (attached to DE 43 ¶ 5, Ex. F); *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 20 (1st Cir. 2001).  That policy includes the provision that the registrar agrees that it will cancel, transfer or otherwise make changes to domain name registrations upon receipt of an order from a court of competent jurisdiction, requiring such action.  Internet Corp. for Assigned Names and Numbers, UDRP ¶ 3(b) (Oct. 24, 1999), *available at* http://www.icann.org/en/dndr/udrp/policy.htm (last visited Oct. 29, 2010) (attached to DE 43 ¶ 6, Ex. G)

1    efforts to evade detection.  Defendants' continued abuse of craigslist and development of the

2    phishing website craigslistsecurity.com, which craigslist did not learn about until after filing its

3    original motion for default judgment resulted in additional fees associated with amending the

4    complaint, reserving Defendants, requesting entry of default and preparing and updating this

5    Motion for Default Judgment.  craigslist's efforts are summarized in the December 15, 2010,

6    Declaration of James McCullagh in Support of craigslist's Motion for Default Judgment

7    ("McCullagh Decl.").  *See* McCullagh Decl. ¶¶ 9, 12-27.  craigslist has also submitted a matrix

8    summarizing the time expended per timekeeper per category of activity.  *See* McCullagh Decl.

9    Ex. A.  craigslist has incurred attorneys fees of $159,765.53 and litigation costs of $2,309.92,

10   McCullagh Decl. ¶¶ 42-43, and therefore requests a total fee and cost award in the total amount of

11   $162,075.45.

12                              **IV.    CONCLUSION**

13          For the foregoing reasons, and in accordance with Rule 55(b)(2) of the Federal Rules of

14   Civil Procedure, plaintiff craigslist respectfully requests that the Court enter default judgment

15   against Defendants Shui Yung Richard Tse, aka Eddie Temple and Eddie Temple Promotions

16   Limited; enter a permanent injunction restraining Defendants and those acting in concert with

17   them from engaging in ongoing and future abuses of craigslist's property and infringements of

18   craigslist's legal rights; award statutory damages under the Copyright Act in a total amount of

19   $300,000; award damages for breach of contract in a total amount of $1,770,000, award

20   attorneys' fees and costs to craigslist in the amount of $162,075.45, and issue an order directing

21   the transfer of Defendants' domain names that are used to harm craigslist.

22

23

24

25

26

27

28

1

2
DATED:  December 16, 2010                **PERKINS COIE** LLP

3
                                         By: /s/ James McCullagh
4                                            Brian Hennessy (SBN 226721)
                                             BHennessy@perkinscoie.com
5                                            Elizabeth L. McDougall (*pro hac vice*)
                                             EMcDougall@perkinscoie.com
6                                            James R. McCullagh (*pro hac vice*)
                                             JMcCullagh@perkinscoie.com

7                                        Attorneys for Plaintiff
                                         craigslist, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28