# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| craigslist, Inc., | NO. C 08-05067 JW |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| Paul Hubert, | |
| Defendant. | |

## I. INTRODUCTION

craigslist, Inc. ("Plaintiff") brings this action against Paul Hubert ("Defendant"),[1] alleging, *inter alia*, copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201, *et seq.*, and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Plaintiff alleges that Defendant developed computer software and other automated devices and programs that enable auto-posting of ads on Plaintiff's website.

Presently before the Court is Plaintiff's Motion for Default Judgment.[2] The Court conducted a hearing on March 8, 2010. Based on the papers submitted to date and oral argument, the Court GRANTS Plaintiff's Motion.

---

[1] Defendant Todd Thompson was dismissed from the case on October 9, 2009. (Docket Item No. 43.)

[2] (Plaintiff craiglist, Inc.'s Motion for Default Judgment Against Paul Hubert, hereafter, "Motion," Docket Item No. 53.)

## II. BACKGROUND

A. **Factual Allegations**

In a Second Amended Complaint filed on September 23, 2009,[3] Plaintiff alleges as follows:

    Plaintiff's website provides free localized online classified advertisement services in over 500 cities in more than 50 countries. (SAC ¶ 27.) The website allows users to review or post online local classified advertisements for various categories of products and services. (Id. ¶ 28.) Plaintiff's Term of Use ("TOU") governs its services and website. (Id. ¶ 34.) Users of the website must affirmatively accept the TOU in order to post advertisements on the website and to create an account on the website. (Id.) The TOU grants users a limited, revocable, nonexclusive license to access Plaintiff's website and services. (Id. ¶ 35.) The license limits the authorized use of the website and services. (Id.) The TOU prohibited, *inter alia*, posting advertisements on behalf of others, accessing craigslist services to facilitate posting advertisement on behalf of others, using a Posting Agent (a third-party agent, service, or intermediary that offers to post content to the website on behalf of others), and using any automated device or computer program that enables posting without each posting being entered manually. (Id. ¶ 37.)

    Plaintiff's website is a work of authorship protected by copyright law. (SAC ¶ 64.) Plaintiff owns all right, title, and interest, including copyrights in the website, the posted classifieds, account registration, and account log-in features. (Id. ¶ 65.) The website displays copyright notices. (Id. ¶ 66.) Plaintiff has registered copyrights in its website, including post classifieds, account registration and account log in expressions, and compilations. (Id. ¶ 67.)

    Plaintiff owns common law rights in the CRAIGSLIST mark. (SAC ¶ 69.) Plaintiff also owns U.S. federal registration nos. 2395628, 2905107, 29985065, and 3008562 for the CRAIGSLIST mark. (Id. ¶ 70.) The federal trademark covers, *inter alia*, "[a]dvertising and

---

[3] (hereafter, "SAC," Docket Item No. 37.)

2

distribution services," "online interactive bulletin boards for transmission of messages among computer users concerning classified listing," and "on-line computer data bases and on-line searchable databases featuring information, classified listings and announcements." (Id.) Plaintiff has also registered the CRAIGSLIST mark in many other countries throughout the world. (Id.)

Defendant operated www.craygo.com and sold "automated posting devices." (SAC ¶ 83.) Defendant advertised that "Craygo allows you to store your ads for future posting, automatically enters your ad data into correct forms on craigslist and properly submits the ads on your behalf." (Id. ¶ 84.) Defendant also provided his customers access to a service that automates and circumvents the entry of CAPTCHA[4] passwords on Plaintiff's website. (Id. ¶ 89.) "Captcha Credits" were available for sale on Defendant's website, ranging from 1000 CAPTCHAs for $20 to 100,000 CAPTCHAs for $1,000. (Id. ¶ 90.)

Defendant accessed and copied Plaintiff's website to develop, test, implement, use and provide his auto-posting software, programs, devices, and services. (SAC ¶ 91.) Defendant affirmatively accepted Plaintiff's TOUs at one or more times when he accessed Plaintiff's website and posting services. (Id. ¶ 95.)

Defendant has used and continue to use the CRAIGSLIST mark in commerce to advertise their software and services on the internet in a manner likely to confuse consumers as to their association, affiliation, endorsement or sponsorship with or by Plaintiff. (SAC ¶ 101.) Defendant's unauthorized use of the CRAIGSLIST mark includes display of the mark in the text and heading of sponsored links on Internet search engines. (Id. ¶ 102.) At no time has Plaintiff authorized or consented to Defendant's use of the CRAIGSLIST mark or any other of Plaintiff's intellectual property. (Id. ¶105.)

On the basis of the allegations outlined above, Plaintiff alleges ten causes of action: (1) Copyright Infringement, 17 U.S.C. §§ 101, et seq.; (2) Violation of the DMCA, 17 U.S.C. § 1201;

---

[4] Plaintiff alleges that CAPTCHA is an acronym for "Completely Automated Public Turing test to tell Computers and Humans Apart." (SAC ¶ 55.)

3

184

(3) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (4) Violation of California Penal Code § 502; (5) Trademark Infringement, 15 U.S.C. §§ 1114 and 1125(a); (6) Trademark Infringement under California Common Law; (7) Breach of Contract; (8) Inducing Breach of Contract; (9) Intentional Interference with Contractual Relations; and (10) Fraud.

B.   **Procedural History**

On November 5, 2008, Plaintiff filed its original Complaint. (See Docket Item No. 1.) On June 10, 2009, the Clerk of Court entered default against Defendant Thompson. (See Docket Item No. 27.) On October 6, 2009, Plaintiff voluntarily dismissed Defendant Thompson without prejudice, which the Court approved. (See Docket Item Nos. 40, 43.)

On October 28, 2009, Plaintiff filed its Request for Entry of Default Against Defendant Hubert. (See Docket Item No. 47.) On November 5, 2009, the Clerk of Court entered default against Defendant Hubert. (See Docket Item No. 49.) On February 25, 2010, the Court issued an Order to Produce Further Evidence of Statutory Damages Associated with the Motion for Default Judgment. (See Docket Item No. 58.) In response to the Court's February 25, 2010 Order, Plaintiff filed a Supplemental Evidentiary Brief in Support of its Motion for Default Judgment Against Defendant Paul Hubert. (hereafter, "Supp. Brief," Docket Item No. 59.)

Presently before the Court is Plaintiff's Motion for Default Judgment against Defendant Hubert.

### III.   STANDARDS

Pursuant to Fed. R. Civ. P. 55(b)(2), a party may move the court for an entry of default judgment. The grant of a default judgment is within the discretion of the court. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986). In the Ninth Circuit, the district court must consider which of seven factors supports the entry of a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of

4

1  Civil Procedure favoring decisions on the merits. <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir.
2  1986).

### IV. DISCUSSION

**A.  Default Judgment**

Plaintiff moves the Court for entry of default judgment against Defendant Hubert on the ground that Defendant Hubert has failed to appear in this action. (Motion at 1.)

The decision to grant or deny a default judgment under Fed. R. Civ. P. 55(b) is within the discretion of the Court. <u>Eitel</u>, 782 F.2d at 1471-72. Although there is strong public policy favoring decisions on the merits, it is only one factor among several to be considered. Thus, the Court examines whether, under the other <u>Eitel</u> factors, default judgment is appropriate in this case.

First, Defendant Hubert has failed to defend or otherwise communicate with the Court. Thus, the Court cannot find that Defendant Hubert has made a showing of excusable neglect. If Plaintiff is not granted default judgment, it would be denied the right to judicial resolution of the claims presented and would be without recourse for protection of its intellectual property rights. <u>Elektra Enter. Group v. Avery</u>, 2007 WL 2023545, at *1 (E.D. Cal. July 11, 2007). Thus, the Court finds that Defendant Hubert's failure to respond to this action or show excusable neglect, measured against the possibility of prejudice to Plaintiff, favors default judgment.

Second, once the Clerk of Court enters default, all well-pleaded allegations regarding liability are taken as true except as to the amount of damages. <u>Fair Housing of Marin v. Combs</u>, 285 F.3d 899, 906 (9th Cir. 2002). Here, the Clerk of Court entered default against Defendant Hubert on November 5, 2009. (<u>See</u> Docket Item No. 49.) Upon review of the Second Amend Complaint, the Court finds that Plaintiff has adequately alleged copyright infringement, trademark infringement, and other federal violations. Thus, the merits of Plaintiff's claims are deemed valid. Since the allegations are taken as true, there is no possibility of a dispute concerning material facts. Therefore, these factors favor granting default judgment for Plaintiff.

With respect to the sum of money at stake, a large amount of money in dispute generally weighs against granting default judgment. See <u>Eitel</u>, 782 F.2d at 1472. Here, Plaintiff seeks

5

damages under several alternative calculations.[5] Plaintiff seeks monetary damages in an amount between $900,000 and $250,000,000. Plaintiff also seeks $71,011.75 in attorney fees and costs. While the damages sought here are significant, the amount sought is not excessive given the allegations. Thus, the Court finds that this factor favors default judgment.

In sum, the Court finds that the Eitel factors weigh in favor of granting default judgment. Accordingly, the Court GRANTS Plaintiff's Motion.

**B.     Remedy**

Plaintiff moves for the following remedies: (1) monetary damages; (2) injunctive relief; and (3) attorney fees and costs. (Motion at 17-22.)

### 1.     Monetary Damages

Plaintiff moves for monetary damages on two bases: (1) statutory damages for Defendant Hubert's violations of the DMCA, and (2) punitive or exemplary damages. (Motion at 19.)

#### a.     Statutory Damages Under the DMCA

At issue is the amount of statutory damages under the DMCA to which Plaintiff is entitled.

The DMCA allows a successful plaintiff to elect either statutory damages or actual damages. 17 U.S.C. § 1203(c)(1). "At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201, in the sum of no less than $200 or more than $2,500 per act of circumvention, device, product, component, offer or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A); Sony Computer Enter. Am., Inc. v. Divineo, Inc., 457 F. Supp. 2d 957, 966 (N.D. Cal. 2006). A court has wide discretion to determine the amount of statutory damages to be awarded and should consider what is reasonable in the particular case in light of the nature of the copyright and the circumstances of the infringement. Los Angeles News Serv. v. Reuters Television Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998).

---

[5] For a detailed analysis of damages sought, see *infra* Section B.1.

6

In this case, Plaintiff seeks statutory damages under the DMCA, rather than actual damages, for each "offer" of a device Defendant Hubert made. (See Motion at 19-20.) Plaintiff contends that each of Defendant Hubert's marketed CAPTCHA Credits were individual offers of circumvention. (Motion at 20; see also SAC ¶¶ 89-90.) CAPTCHA Credits were offered on the Craygo website in bundles ranging from 1000 CAPTCHAs for $20 to 100,000 CAPTCHAs for $1000. (SAC ¶ 90.) Plaintiff calculated its statutory damages by multiplying 100,000 CAPTCHAs– Defendant Hubert's largest offer of circumvention in a single bundle–by the maximum possible statutory award per violation of $2500. Thus, Plaintiff requests statutory damages in the amount of $250,000,000.

In the alternative, Plaintiff offers a lower statutory damages calculation of $900,000 based on evidence that the Craygo website had over 3000 users.[6] Plaintiff asks the Court to assume that at least half of Craygo users purchased Craygo Elite, Defendant Hubert's circumventing software product, and that each Craygo Elite user also purchased CAPTCHA Credits, purchasing credits needed to utilize the software.[7] (Supp. Brief at 2-4.) Plaintiff does not present any evidence, however, that any Craygo user actually purchased the Craygo Elite program or CAPTCHA Credits. However, the Court may reasonably infer, for purposes of calculating statutory damages, that an offer to circumvent Plaintiff's security systems was made to each of the 3000 Craygo users.

Additionally, the Court finds that Plaintiff has not alleged that Defendant Hubert engaged in the kind of egregious or malicious conduct that would warrant the imposition of the maximum statutory damages. An award of statutory damages in the range that Plaintiff initially requested, between $20,000,000 and $250,000,000, would be vastly disproportional to the actual costs that Plaintiff alleges that it incurred as a result of auto-posting, $5000 per year.[8] Instead, the Court finds

---

[6] (See Declaration of David E. Weeks in Support of Plaintiff Craigslist, Inc.'s Motion for Default Judgment Against Defendant Paul Hubert, Exs. 1, 2, 3 (screenshots of Craygo website claiming that the site has over 3000 users).)

[7] The Court notes that Plaintiff's Motion requests statutory damages for each "offer," but in its Supplemental Brief, Plaintiff requests additional recovery based on "products sold by Defendant [Hubert]." (Motion at 20, Supp. Brief 2-4.)

[8] (See SAC ¶ 110.)

7

that a statutory damages award of $400 for each of the 3000 Craygo users is more reasonable under the circumstances here.

Accordingly, the Court awards Plaintiff statutory damages in the amount of $1,200,000.

### b. Punitive or Exemplary Damages

Plaintiff moves for an award of punitive or exemplary damages. (Motion at 21.)

Although "[p]unitive damages may be awarded as part of a default judgment award," the Court finds that an award of punitive damages is not appropriate in this case because Plaintiff has not shown that Defendant Hubert engaged in extreme and outrageous conduct. See Janvrin Holdings Ltd. v. Hilsenrath, 2007 WL 2155702, at *3 n.13 (N.D. Cal. July 26, 2007).

Accordingly, the Court DENIES Plaintiff's Motion as to punitive damages.

### 2. Injunctive Relief

Plaintiff moves for a permanent injunction pursuant to Section 502 of the Copyright Act.

An injunction against further infringement and even infringement of future works is permitted, and it is appropriate to grant an injunction on an application for default judgment. Elektra Entertainment Group Inc. v. Crawford, 226 F.R.D. 388, 393-94 (C.D. Cal. 2005). To obtain permanent injunctive relief, a plaintiff must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Geertson Seed Farms v. Johanns, 570 F.3d 1130, 1136 (9th Cir. 2009). "[T]he alleged availability of money damages is not a reason to deny injunctive relief . . . ." Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 827 (9th Cir. 1997).

Here, Plaintiff has alleges in pertinent part:

> [T]he harm to craigslist's relationships, reputation, and goodwill with legitimate users is real and irreparable. (SAC ¶ 112.) For example, users have blamed craigslist for interference with the fair and efficient operation of craigslist services caused by illicit auto-posting, and have accused craigslist of conspiring with parties responsible for auto-posting, like Defendant. Users who become frustrated by auto-posting on craigslist may stop using craigslist and never return. Such injuries to craigslist cannot be compensated by monetary damages and are irreparable. (Id. ¶ 112.)

8

189

The Court finds that Plaintiff has alleged sufficient facts to demonstrate that Defendant Hubert's actions caused irreparable harm to Plaintiff's reputation and relationships with its customers, and that an award of monetary damages would not adequately remedy that harm. In light of Defendant Hubert's default in this action, it appears that failing to grant the requested injunction would result in Plaintiff's continued exposure to Hubert's infringing activities.

Accordingly, the Court finds that injunctive relief is appropriate.

### 3.   Attorney Fees

Plaintiff moves for an award of attorney fees and costs.

A court, in its discretion, "may award reasonable attorney's fees and cost to the prevailing party." 17 U.S.C. § 1203(b)(5).

Here, Plaintiff initially requested attorney fees totaling $69,335.50 and cost totaling $1676.25.[9] After the Court ordered Plaintiff to produce additional evidence of statutory damages on February 25, 2010, Plaintiff requested additional attorney fees incurred in producing the requested supplemental briefing.[10] The amount Plaintiff currently seeks is $81,965.75, an increase of $10,954 over its original request. (Id.) In light of the procedural posture of the case, the Court finds the amount requested excessive. At such an early stage in the litigation, where no responsive pleadings or motions have been filed, the Court finds that half the amount requested is a more appropriate measure of attorney fees and costs.

Accordingly, the Court awards Plaintiff attorney fees and costs in the amount of $40,982.88.

---

[9] (Motion at 22; Declaration of Elizabeth McDougall in Support of Plaintiff craigslist, Inc.'s Motion for Default Judgment, hereafter, "McDougall Decl.," Docket Item No. 57.)

[10] (Craigslist's Request for Attorneys' Fees Incurred in Providing Supplemental Briefing in Support of Plaintiff Craigslist, Inc.'s Motion for Default Judgment Against Defendant Paul Hubert, hereafter, "Supp. Request for Attorney Fees," Docket Item No. 61.)

9

## V. CONCLUSION

The Court GRANTS Plaintiff's Motion for Default Judgment. Judgment shall be entered in favor of Plaintiff and against Defendant accordingly.

Dated: April 15, 2010

                                                  *James Ware*
JAMES WARE
United States District Judge

1  THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:

2  Brian Patrick Hennessy bhennessy@perkinscoie.com
   Elizabeth L. McDougall EMcDougall@perkinscoie.com
3  Liling Poh lpoh@perkinscoie.com

5  Dated: April 15, 2010                              Richard W. Wieking, Clerk

7                                                     By:___/s/ JW Chambers_____
                                                          Elizabeth Garcia
8                                                         Courtroom Deputy

# EXHIBIT O

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

XCENTRIC VENTURES, L.L.C., an )
Arizona Limited Liability )
Corporation, )
                              Plaintiff, )
     vs. )
ELIZABETH ARDEN, d/b/a )
Complaintsboard.com, et al., )
                              Defendants. )   No. 2:08-cv-2299-HRH

<u>JUDGMENT</u>

This matter came on regularly before the court, the plaintiff appearing by and through its attorneys, Jaburg & Wilk, P.C., by Maria Crimi Speth. The defendant Elizabeth Arden, d/b/a ComplaintsBoard.com, has failed to appear either in person or by counsel. The court has heretofore granted plaintiff's motion for entry of default judgment.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of the plaintiff XCENTRIC VENTURES, LLC, and against the defendant ELIZABETH ARDEN, d/b/a COMPLAINTSBOARD.COM, as follows:

    A.   For statutory damages in the principal amount of $60,000.00;

    B.   For interest on the statutory damages at the federal legal rate of 2.08% per annum from the date of this judgment until paid in full;

- 1 -

C.   For plaintiff's taxable costs in the principal amount of $396.59;

D.   For plaintiff's attorney fees in the principal amount of $3,145.00; and

E.   For interest on plaintiff's taxable costs and attorney fees at the federal legal rate of 2.08% per annum from the date of this judgment until paid in full.

<u>PERMANENT INJUNCTION</u>

IT IS FURTHER ORDERED that Elizabeth Arden, d/b/a ComplaintsBoard.com, and its officers, agents, employees, independent contractors, or other persons acting under its supervision and control or at its request are permanently enjoined from:

A.   Willfully using without authorization copyrighted material owned by or licensed to any of the following:

   a.   Xcentric Ventures, LLC

   b.   Ripoff Report

   c.   Any customer of Xcentric or Ripoff Report.

B.   Willfully using without authorization the "RIP-OFF REPORT" mark in connection with any consumer complaint website, message board, blog, article, or any other type of publication.

IT IS FURTHER ORDERED directing defendant ComplaintsBoard remove all content that is in violation of the permanent injunction from www.complaintsboard.com. In the event that is not completed within seven (7) days of this judgment, the host of www.complaintsboard.com is directed to terminate services for ComplaintsBoard until such time that ComplaintsBoard removes all

infringing content from www.complaintsboard.com and is in compliance with this permanent injunction.

IT IS FURTHER ORDERED that in the event defendant ComplaintsBoard fails to remove the content that is in violation of the permanent injunction from the website www.complaintsboard.com within seven (7) days of this judgment, pursuant to Section 3.b of the Uniform Domain Name Dispute Resolution Policy, plaintiff may obtain transfer of the registration from the Domain Name Registrar(s) of the domain names for all websites still containing content in violation of the permanent injunction, including, but not necessarily limited to, www.complaintsboard.com.

IT IS FURTHER ORDERED that those domain names transferred to plaintiff pursuant to this judgment shall not be used for any commercial purpose.

IT IS FURTHER ORDERED that this permanent injunction applies to ComplaintsBoard.com regardless of the name or names it uses or goes by or may in the future use or go by.

DATED at Anchorage, Alaska, this 22nd day of October, 2009.

/s/ H. Russel Holland
United States District Judge