United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| craigslist, Inc., | NO. C 09-04738 JW |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| Shui Yung Richard Tse aka Eddie Temple, d/b/a craigspimp.com and shadydollars.com, Eddie Temple Promotions LTD, | |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff craigslist, Inc. ("craigslist") brings this action against Shui Yung Richard Tse, aka Eddie Temple, and Eddie Temple Promotions (collectively, "Defendants"), alleging, *inter alia*, copyright infringement, breach of contract and fraud.  Plaintiff alleges that Defendants operated a scam that abused Plaintiff's website, www.craigslist.org, by soliciting and paying people to post false and misleading advertisements on Plaintiff's website.

Presently before the Court is Plaintiff's Motion for Default Judgment. (hereafter, "Motion," Docket Item No. 57.)  The Court conducted a hearing on June 27, 2011.  Based on the papers submitted to date and oral argument, the Court GRANTS Plaintiff's Motion for Default Judgment.

## II.  BACKGROUND

In a Second Amended Complaint[1] filed on November 19, 2010, Plaintiff alleges as follows:

Plaintiff is a Delaware corporation with its principal place of business in San Francisco, California. (SAC ¶ 9.) Plaintiff operates a website which provides free, localized online classified advertisements. (Id. ¶ 22.) Defendant Shui Yung Richard Tse, aka Eddie Temple, d/b/a www.craigspimp.com and www.shadydollars.com, is an individual who resides in Vancouver, Canada. (Id. ¶ 10.) Defendant Eddie Temple Promotions is a UK Limited Company whose registered office is located in the United Kingdom. (Id. ¶ 11.) Defendants Eddie Temple and Eddie Temple Promotions are the registrants for the websites www.craigspimp.com and www.shadydollars.com. (Id. ¶ 13.) Defendants Shui Yung Richard Tse and Eddie Temple are the same person. (Id. ¶ 14.)

Defendants post advertisements to Plaintiff's website on behalf of others for a fee, and pay affiliates to do the same. (SAC ¶¶ 78-79.) Defendants solicit affiliates to post false and misleading advertisements in the "personals" section of Plaintiff's website. (Id. ¶ 84.) In these false and misleading advertisements, Defendants' affiliates pretend to be young women who are interested in sexual encounters. (Id.) When a user of Plaintiff's website responds to one of these false and misleading advertisements, the user is sent an email which leads to fraudulent websites where the user is encouraged to subscribe to "racy online dating websites." (Id. ¶¶ 86-87.) Each time a user of Plaintiff's website signs up for one of the dating services promoted on these websites, Defendants profit. (Id. ¶ 88.) Defendants access and copy Plaintiff's website in an unauthorized manner to develop, operate and update their posting services. (Id. ¶¶ 91-94.)

---

[1] (Plaintiff craigslist, Inc.'s Second Amended Complaint for Copyright Infringement; Violation of the Digital Millennium Copyright Act; Violation of the Computer Fraud and Abuse Act; Violation of California Penal Code § 502; Breach of Contract; Inducing Breach of Contract; Intentional Interference with Contractual Relations; and Fraud, hereafter, "SAC," Docket Item No. 47.)

On the basis of the allegations outlined above, Plaintiff alleges eight causes of action: (1) Copyright Infringement under 17 U.S.C. § 101, *et seq.*; (2) Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.*; (3) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (4) Violation of California Penal Code § 502; (5) Breach of Contract; (6) Inducing Breach of Contract; (7) Intentional Interference with Contractual Relations; and (8) Fraud.

**B.  Procedural History**

On October 5, 2009, Plaintiff filed its Complaint against Defendants. (See Docket Item No. 1.) On May 14, 2010, Plaintiff filed a First Amended Complaint.[2] On June 16, 2010, Plaintiff filed a Motion for Entry of Default as to Defendants. (See Docket Item No. 25.) On June 18, 2010, the Clerk entered default against Defendants. (See Docket Item No. 29.)

On October 11, 2010, Plaintiff filed a Motion for Default Judgment. (See Docket Item No. 38.) On November 16, 2010, the Court denied Plaintiff's Motion for Default Judgment as premature. (See Docket Item No. 46.) The Court explained that Plaintiff had requested an Order transferring ownership of certain domain names as a remedy, but that this remedy had not been sought in Plaintiff's Amended Complaint. (Id. at 1.) The Court granted Plaintiff leave to file an Amended Complaint adding the new requested remedy, and to refile its Motions for Entry of Default and Default Judgment, should Defendants fail to respond to the Amended Complaint. (Id.) On November 19, 2010, Plaintiff filed a Second Amended Complaint. (See SAC.) On December 7, 2010, Plaintiff filed a Motion for Entry of Default as to Defendants. (See Docket Item No. 49.) On December 9, 2010, the Clerk entered default against Defendants. (See Docket Item No. 51.)

On December 16, 2010, Plaintiff filed a second Motion for Default Judgment. (See Docket Item No. 52.) On March 2, 2011, the Court denied Plaintiff's Motion for Default Judgment as premature. (hereafter, "March 2 Order," Docket Item No. 56.) The Court explained that Plaintiff had not provided the Court with specific authority to permit the Court to order the requested remedy

---

[2] (Plaintiff craigslist, Inc.'s First Amended Complaint for Copyright Infringement; Violation of the Digital Millennium Copyright Act; Violation of the Computer Fraud and Abuse Act; Violation of California Penal Code § 502; Breach of Contract; Inducing Breach of Contract; Intentional Interference with Contractual Relations; and Fraud, Docket Item No. 20.)

3

of a transfer of domain names. (Id.) Such a remedy is available under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 8131(2). The Court granted Plaintiff leave to file a Third Amended Complaint, adding the requested cause of action under the ACPA. (See March 2 Order at 2-3.) On March 17, Plaintiff filed a third Motion for Default Judgment.[3] (See Docket Item No. 57.)

Presently before the Court is Plaintiff's Motion for Default Judgment.

### III. STANDARDS

Pursuant to Fed. R. Civ. P. 55(b)(2), a party may move the court for an entry of default judgment. The grant of a default judgment is within the discretion of the court. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986). In the Ninth Circuit, the district court must consider which of seven factors supports the entry of a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### IV. DISCUSSION

Plaintiff moves the Court for an entry of default judgment against Defendants on the ground that Defendants have failed to answer or otherwise appear in this action. (Motion at 4.)

**A.  Default Judgment**

The decision to grant or deny a default judgment under Fed. R. Civ. P. 55(b) is within the discretion of the Court. See Eitel, 782 F.2d at 1471-72. Although there is strong public policy

---

[3] In this Motion, Plaintiff contends that the domain names that were the subject of its earlier request for an order transferring domain names either "will have expired by the hearing date of [this Motion] or are no longer owned by Defendants." (Motion at 5.) Plaintiff thus states that it has "elected to not file a [Third Amended Complaint]," and is "withdrawing from [this Motion] its request for an order directing the transfer of domain names." (Id.)

4

favoring decisions on the merits, it is only one factor among several to be considered. Thus, the Court examines whether, under the other Eitel factors, default judgment is appropriate in this case.

First, Defendants have failed to defend the action or otherwise communicate with the Court. Thus, Defendants have made no showing of excusable neglect. If Plaintiff is not granted default judgment, it will be without recourse for protection of its intellectual property rights. Elektra Enter. Group v. Avery, 2007 WL 2023545, at *1 (E.D. Cal. July 11, 2007). Further, if Plaintiff is not granted default judgment, it will be unable to recover damages which it is entitled to recover for copyright infringement and breach of contract. The Court finds that Defendants' failure to demonstrate excusable neglect, measured against the possibility of prejudice to Plaintiff, favors default judgment.

Second, once the Clerk of Court enters default, all well-pled allegations regarding liability are taken as true except as to the amount of damages. Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Here, the Clerk of Court entered default on December 9, 2010. (See Docket Item No. 51.) Upon review of Plaintiff's Second Amended Complaint, the Court finds that Plaintiff has adequately alleged copyright infringement and other federal violations. Thus, the merits of Plaintiff's claims are deemed valid. Since the allegations are taken as true, there is no possibility of a dispute concerning material facts. Therefore, these factors favor granting default judgment for Plaintiff.

Third, with respect to the sum of money at stake, a large amount of money generally weighs against granting default judgment. See Eitel, 782 F.2d at 1472. Here, Plaintiff seeks $300,000 in statutory damages and $1,177,000 in contract damages. (Motion at 20, 22.) In light of the allegations against Defendants, these amounts are not so large as to outweigh the other five Eitel factors that favor a grant of default judgment. Moreover, the Court has discretion to award a lesser amount under 17 U.S.C. § 504(c).

In sum, the Court finds that the Eitel factors weigh in favor of granting default judgment. Accordingly, the Court GRANTS Plaintiff's Motion for Default Judgment.

5

**B.     Remedy**

Plaintiff seeks: (1) a permanent injunction pursuant to Section 502 of the Copyright Act; (2) statutory damages under the Copyright Act in the amount of $300,000; (3) damages for breach of contract in the amount of $1,177,000;[4] and (4) attorney fees and costs in the amount of $162,075.45.

### 1.     Injunctive Relief

At issue is whether a permanent injunction is warranted to prevent Defendants from continuing to infringe Plaintiff's copyrights.

The Copyright Act permits courts to grant temporary and final injunctions on such terms as a court may deem reasonable to prevent or restrain infringement of a copyright. 17 U.S.C. § 502(a). It is appropriate to grant an injunction on an application for default judgment. Elektra Entertainment Group, Inc. v. Crawford, 226 F.R.D. 388, 393-94 (C.D. Cal. 2005). An injunction against further infringement and even infringement of future works is permitted. Id. To obtain permanent injunctive relief, a plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). "[T]he alleged availability of money damages is not a reason to deny injunctive relief." Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 827 (9th Cir. 1997).

Here, Plaintiff has alleged that unless restrained, Defendant Temple will continue to cause irreparable injury for which monetary compensation is not a complete remedy. (SAC ¶¶ 104-106.) Defendant Temple has defaulted and it appears that the failure to grant the requested injunction would result in Plaintiff's continued exposure to harm. Thus, the Court finds that injunctive relief is appropriate. Accordingly, the Court grants Plaintiff's request for a permanent injunction.

---

[4] Plaintiff requests breach of contract damages in two different amounts: (1) $1,177,000; and (2) $1,770,000. (Motion at 22, 24.) Based on Plaintiff's own calculations that the breach of contract damages should be equal to 5885 multiplied by $200, or $1,177,000, the Court takes $1,177,000 as the correct amount of breach of contract damages sought by Plaintiff.

6

### 2. Statutory Damages

At issue is whether Plaintiff may recover statutory damages for Defendants' violations of the Copyright Act.

Where a plaintiff prevails in a copyright infringement case, the Copyright Act provides for an award of statutory damages in a sum of not less than $750 or more than $30,000 for each infringement at the court's discretion. 17 U.S.C. § 504(c). Damages may be increased up to $150,000 per infringement if the copyright owner proves willful infringement. Id. § 504(c)(2). Statutory damages are particularly appropriate when the defendant has failed to mount any defense or to participate in discovery since this increases the difficulty of ascertaining the plaintiff's actual damages. Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

Here, Plaintiff seeks the maximum amount of $150,000 for each of two willful acts of infringement: (1) the unauthorized creation of a derivative work of the account verification page of Plaintiff's website; and (2) the unauthorized copying of Plaintiff's website for the use and display on Defendants' website. (Motion at 20.) The Court finds that Defendants' infringement was willful, given that Defendants, on one of their websites, disclosed the fraudulent nature of their scheme and offered instructions to circumvent Plaintiff's security measures.[5] Defendants also stated, on one of their websites: "Look, this stuff isn't ethical . . . and some of it is just barely legal. But it works." (Weeks Decl. ¶ 3, Ex. D.) Plaintiff sent three separate cease and desist letters to Defendant Temple, who acknowledged receiving them and responded "sue me all you want."[6] Accordingly, the Court finds that Defendants' infringement was willful, and awards Plaintiff the maximum $150,000 per violation, for a total of $300,000 in statutory damages.

### 3. Breach of Contract Damages

At issue is whether Plaintiff may recover damages for Defendants' breach of contract.

---

[5] (Declaration of David E. Weeks in Support of Plaintiff craigslist, Inc.'s Motion for Default Judgment ¶ 3, Exs. B, C, hereafter, "Weeks Decl.," Docket Item No. 54.)

[6] (Declaration of Jeremy L. Buxbaum in Support of Plaintiff craigslist, Inc.'s Motion for Default Judgment ¶¶ 11-13, Ex. A, Docket Item No. 41.)

7

Parties to a contract may agree in advance to liquidate their damages, by providing ahead of time that a certain sum of money is conclusively presumed to represent the amount of damage that will be caused by a specified breach of the contract. Utility Consumers' Action Network, Inc. v. AT&T Broadband of South. Cal., Inc., 135 Cal. App. 4th 1023, 1028 (Cal. Ct. App. 2006). Under California law, liquidated damages clauses are generally valid unless the party contesting it shows that the clause was unreasonable under the circumstances existing at the time the parties entered into the contract. Allen v. Smith, 94 Cal. App. 4th 1270, 1278 (Cal. Ct. App. 2002).

Here, Plaintiff seeks liquidated damages in the amount of $1,177,000 pursuant to the liquidated damages clause appearing in its Terms of Use ("TOU"). The TOU provides, in relevant part: "If you post Content in violation of the TOU . . . you agree to pay craigslist one hundred dollars ($100) for each Item of Content posted." (SAC, Ex. A ¶ 19.) The TOU further provides: "If you are a Posting Agent that uses the Service in violation of the TOU, in addition to any liquidated damages under [the previous clause], you agree to pay craigslist one hundred dollars ($100) for each and every Item you post in violation of the TOU." (Id.) Plaintiff demonstrates that Defendants acted as a "Posting Agent" as defined in the TOU. (SAC ¶¶ 78-79.) Thus, Plaintiff contends that it is entitled to $200 for each advertisement Defendants posted as a Posting Agent in violation of the TOU.

To establish the total amount of liquidated damages, Plaintiff provides evidence of a log of entries from a PayPal account used by Defendants to pay individuals who posted advertisements in violation of the TOU. (Weeks Decl. ¶¶ 4-8, Ex. M.) That PayPal log shows 5,885 separate payments made by Defendants to individuals who posted advertisements, with each payment representing at least one fake advertisement posted, and therefore at least one violation of the TOU. (Id. ¶¶ 6-7.) Thus, Plaintiff seeks $1,177,000, which is an amount equal to $200 for each of the 5,885 documented violations of the TOU. Plaintiff contends that this is the minimum amount it could have requested, as the calculation is based solely on a single PayPal log, even though Paypal was "just one of several payment methods used by Defendants," and the calculation assumes that each payment was merely for a single advertisement. (Motion at 22.)

8

Having considered Plaintiff's documents and method of calculating liquidated damages under the TOU, the Court finds that Plaintiff has demonstrated that it is entitled to an award of liquidated damages for Defendants' violations of the TOU. Further, the Court finds that the amount of liquidated damages sought by Plaintiff is reasonable and appropriate. Accordingly, the Court awards Plaintiff $1,177,000 in liquidated damages.

### 4. Attorney Fees and Costs

At issue is whether Plaintiff may recover attorney fees and costs associated with bringing its claims.

In copyright infringement cases, courts have discretion to award the "recovery of full costs and reasonable attorney fees." 17 U.S.C. § 505. Attorney fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful. Rio Properties, Inc. v. Rio Int'l. Interlink, 284 F.3d 1007, 1023 (9th Cir. 2002).

After finding that a plaintiff is entitled to fees, "[i]t remains for the district court to determine what fee is reasonable." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The law is well-established that the starting point for determining the amount of an attorney fee award is to calculate the "Lodestar." Id.; Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). A court calculates the Lodestar by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Id.

Once the Lodestar is calculated, there exists a strong presumption the figure "represents a reasonable fee." Id. at 363 n.8. Nevertheless, after the Lodestar is calculated, a court may assess "whether it is necessary to adjust the presumptively reasonable Lodestar figure on the basis of the Kerr factors that are not already subsumed in the initial Lodestar calculation." Id. at 363; Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975). The twelve Kerr factors bearing on the reasonableness of the calculation of attorney fees under federal law are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability

9

of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Id. While it is not incumbent on the court to address the Kerr factors expressly, it must take into account those factors not already subsumed in the Lodestar. Morales, 96 F.3d at 364 n.10.

In support of its request for attorney fees, Plaintiff contends that it had no option but to file this action, as Defendants concealed their identities and refused to comply with Plaintiff's demands to stop their fraudulent activities. (Motion at 23.) In the Second Amended Complaint, whose allegations regarding liability must be taken as true for the purposes of this Motion, Plaintiff alleges that Defendants' infringement was willful, fraudulent and malicious. (SAC ¶ 100.) Therefore, Plaintiff should be granted both attorney fees and costs.

Here, Plaintiff seeks fees in the amount of $159,765.53 and costs in the amount of $2,309.92,[7] for a total of $162,075.45.[8] Plaintiff seeks fees according to the following:

| Attorney | Hours | Rate | Total |
| --- | --- | --- | --- |
| James McCullagh | 72.6 | $572.50 | $41,563.50 |
| Brian Hennessey | 7.4 | $520 | $3,848.00 |
| Jeremy Buxbaum | 227.1 | $360 | $81,756.00 |
| David Weeks | 139.7 | $267.50 | $37,369.75 |
| Simon Conant | 47.2 | $275 | $12,980.00 |

This amounts to $177,517.25, which Plaintiff's attorneys have discounted by 10 percent to arrive at the requested fees amount of $159,765.53.[9] (McCullagh Decl. ¶ 33, Ex. A.)

---

[7] The costs consist of messenger and courier fees of $203.74, a filing fee of $350, pro hac vice fees of $420, service fees of $805.28 and $530.90 for a private investigator. (Declaration of James McCullagh in Support of craigslist's Motion for Default Judgment ¶ 44, hereafter, "McCullagh Decl.," Docket Item No. 53.)

[8] (McCullagh Decl. ¶¶ 42-43.)

[9] Plaintiff's attorneys bill craigslist for legal services by applying their standard hourly rate for each billable timekeeper to the time expended on each individual matter by that timekeeper. (McCullagh Decl. ¶ 33). Plaintiff's attorneys then discount the total fees billed to craigslist by 10 percent. (Id.)

10

Upon consideration of the documents provided by Plaintiff and the Kerr factors outlined above, the Court finds that the amount of fees and costs requested are reasonable. Accordingly, the Court awards Plaintiff attorney fees and costs in the amount of $162,075.45.[10]

In sum, the Court GRANTS Plaintiff's request for: (1) a permanent injunction to prevent infringing behavior; (2) $300,000 in statutory damages; (3) $1,177,000 in liquidated damages; and (4) $162,075.45 in attorney fees and costs.

## V. CONCLUSION

The Court GRANTS Plaintiff's Motion for Default Judgment. Judgment shall be entered in favor of Plaintiff and against Defendants as follows:

Judgment shall be entered against Defendants in the amount of $1,639,075.45, which represents $300,000 in statutory damages, $1,177,000 in liquidated damages, and $162,075.45 in attorney fees and costs. Defendants are ordered to pay interest on the principal amount of the judgment to Plaintiff at the statutory rate pursuant to 28 U.S.C. § 1961(a).

Defendants Shui Yung Richard Tse, aka Eddie Temple, and Eddie Temple Promotions Limited, and their respective officers, agents, servants, employees and attorneys, and all persons in active concert and participation with them who receive actual notice of the injunction are hereby restrained and enjoined from:

    1. Posting false or misleading content on craigslist;

    2. Posting ads on behalf of others, causing ads to be posted on behalf of others, and accessing craigslist to facilitate posting ads on behalf of others;

    3. Using a third-party agent, service, or intermediary to post content to craigslist;

    4. Using any automated device or computer program that enables postings on craigslist without each posting being entered manually (an "automated posting device"), including, without limitation, the use of any automated posting device to submit postings to craigslist in bulk;

    5. Manufacturing, developing, creating, adapting, modifying, exchanging, offering,

---

[10] Plaintiff does not seek additional attorney fees resulting from efforts following the Court's March 2 Order denying Plaintiff's previous Motion for Default Judgment as premature. (Motion at 23.)

11

distributing, selling, providing, importing, making available, trafficking in, or using content that uses automated means (including, but not limited to, spiders, robots, crawlers, data mining tools, and data scraping tools) to download or otherwise obtain data from craigslist;

6. Engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of, craigslist's services or the craigslist website;

7. Copying, distributing, displaying, creating derivative works or otherwise using protected elements of craigslist's copyrighted website (located at www.craigslist.org), including, but not limited to, the website's post to classifieds, account registration and account log in expressions and compilations, and from inducing, encouraging, causing or materially contributing to any other person or entity doing the same;

8. Circumventing technological measures that control access to craigslist's copyrighted website and/or portions thereof (including, but not limited to, CAPTCHAs and RECAPTCHAs), and from inducing, encouraging, causing or materially contributing to any other person or entity doing the same;

9. Accessing or attempting to access craigslist's computers, computer systems, computer network, computer programs, and data, without authorization or in excess of authorized access, including, but not limited to, creating accounts or posting content on the craigslist website, and from inducing, encouraging, causing, materially contributing to, aiding or abetting any other person or entity to do the same;

10. Misusing or abusing craigslist, the craigslist website and craigslist services in any way, including, but not limited to, violating craigslist's Terms of Use;

11. Accessing or using craigslist's website for any commercial purpose whatsoever;

12. Using the CRAIGSLIST mark and any confusingly similar designations in Internet advertisements and otherwise in commerce in any manner likely to confuse consumers as to their association, affiliation, endorsement or sponsorship with or by craigslist; and

13. Registering or using any internet domain name that contains "cl," "craig" or "craigslist" in association with any commercial purpose or in a manner that is likely to lead to confusion.

Dated: June 27, 2011

JAMES WARE
United States District Chief Judge

12

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Brian Patrick Hennessy bhennessy@perkinscoie.com
Elizabeth L. McDougall EmcDougall@perkinscoie.com
James Robert McCullagh jmccullagh@perkinscoie.com

**Dated: June 27, 2011**          **Richard W. Wieking, Clerk**

                                  **By:      /s/ JW Chambers**
                                       **Susan Imbriani**
                                       **Courtroom Deputy**

**United States District Court**
For the Northern District of California